AWKERMAN v TRI-COUNTY ORTHOPEDIC GROUP, PC

Docket No. 76443. Submitted April 1, 1985, at Detroit.—Decided June 19, 1985.

Shawn Awkerman, a minor, suffered several bone fractures during a four-month period in 1979. The treating physicians, members of the Tri-County Orthopedic Group, P.C., suspected the cause to be Osteogenesis Imperfecta but when that diagnosis was ruled out the physicians filed a report of suspected child abuse. A separate examination conducted by another physician on the order of the juvenile court resulted in the filing of a supplemental child abuse report. As a result, Shawn was eventually removed from his mother's custody and placed in foster care. While in foster care he suffered another fracture and was ultimately diagnosed by another physician as suffering from Osteogenesis Imperfecta. As a result the juvenile court dismissed the charges of child abuse and Shawn was returned to his mother. Shawn, by his next friend Linda Awkerman (his mother), and Linda Awkerman in her own capacity brought an action against Tri-County Orthopedic Group, P.C., and the several individual physicians who had treated or examined Shawn, seeking damages for malpractice in failing to diagnose Shawn's disease, for breach of warranty to conform his care to the applicable standard of practice, and for the wrongful reports of child abuse. The Wayne Circuit Court, Joseph B. Sullivan, J., granted summary judgments for defendants on the claims of breach of warranty and the claims of damages resulting from the filing of the child abuse reports. Plaintiffs appealed. *Held:*

1. The trial court properly granted summary judgment on the breach of warranty claim. The standard used to determine a physician's breach of an implied contract is the same as that

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Physicians, Surgeons, and Other Healers § 326 *et seq.*
Recovery against physician on basis of breach of contract to achieve particular result or cure. 43 ALR3d 1221.

[2] Am Jur 2d, Physicians, Surgeons, and Other Healers § 259 *et seq.*
Civil liability of physician for failure to diagnose or report battered child syndrome. 97 ALR3d 338.

used to determine malpractice, thus the count alleging breach of warranty was redundant.

2. The defendants are granted statutory immunity from liability for filing the child abuse reports where there is no allegation of bad faith, even though the reports were filed due to an allegedly negligent diagnosis. That immunity extends to consequential damages such as shame and humiliation arising from the erroneous child abuse report. Plaintiffs are entitled to seek damages only for the direct results of any malpractice.

Affirmed.

1. PHYSICIANS AND SURGEONS — MALPRACTICE — BREACH OF IMPLIED CONTRACT — PLEADING.

The standard used to determine whether a physician has breached an implied contract in the treatment of a patient is the same as the standard used to determine whether the physician is guilty of malpractice; therefore, a complaint which alleges both malpractice and breach of implied contract is redundant.

2. PHYSICIANS AND SURGEONS — CHILD ABUSE — IMMUNITY FROM LIABILITY.

A physician who in good faith reports a case of suspected child abuse is immune from civil or criminal liability for damages arising from the filing of the report even where the report is erroneous as a result of the physician's malpractice (MCL 722.625; MSA 25.248[5]).

*C. Michael Kimber,* for plaintiffs.

*Siemon, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Raymond W. Morganti),* for defendants Tri-County Orthopedic Group, P.C., Edward A. Loniewski, D.O., John J. Swienckowski, D.O., and Henry J. Parcinski, D.O.

*Kitch, Saurbier & Drutchas, P.C.* (by *Ronald E. Wagner* and *Robert M. Wyngaarden),* for defendant Stewart Kaufman, M.D.

Before: BRONSON, P.J., and J. H. GILLIS and ALLEN, JJ.

PER CURIAM. Plaintiffs appeal as of right from

the circuit court orders of March 2, 1983, and January 27, 1984, granting defendants' motions for partial summary judgment. The summary judgment orders were certified as final on January 18 and 27, 1984.

For purposes of this appeal, the facts are not in dispute. Plaintiff Shawn Awkerman is a young boy born November 16, 1974, who has suffered from numerous bone fractures. From July to November of 1979, when he was five years old, Shawn was a patient of Doctors Swienckowski, Parcinski and Loniewski of the Tri-County Orthopedic Group. During this four-month period, plaintiff sustained five bone fractures. Originally, Osteogenesis Imperfecta, or "brittle bone disease", was the suspected cause but this diagnosis was later ruled out and, thus, a report of suspected child abuse was filed. After an investigation by a social worker, Shawn was removed from his mother's custody and placed briefly in a children's home, then in the home of his great aunt and uncle.

At the request of the counsel for plaintiff Linda Awkerman the Juvenile Court arranged for an examination of Shawn by another physician, defendant Kaufman. Dr. Kaufman also diagnosed plaintiff's problem as child abuse and filed a supplemental report on suspected child abuse with the Department of Social Services.

While in his foster placement, Shawn sustained another bone fracture by dropping a toy on his toe. Ultimately, he was examined by Dr. Christopher Lee, director of the Fracture Clinic at Children's Hospital. Dr. Lee diagnosed Shawn as indeed suffering from Osteogenesis Imperfecta. As a result, the Juvenile Court dismissed the charges of child abuse and, after four months of foster care, Shawn was returned to his mother.

Shawn and his mother then filed suit for dam-

ages arising out of the charges of child abuse. Count I of the complaint alleged malpractice for failing to diagnose Shawn's disease and breach of the duty to conform his "care, treatment, and medical evaluation to the standard of practice" in various particulars. Count II charged the doctors with breach of an express and/or implied warranty to conform Shawn's care to the applicable standard of practice. Count III requested damages for the wrongful reports of child abuse and for Shawn's removal from his mother's custody.

On November 10, 1982, defendant Kaufman was granted summary judgment as to Count III of the complaint. The Orthopedic Group doctors were granted summary judgment as to Count II through an order dated March 2, 1983, and Count III in a January 27, 1984 order. The January 27, 1984, order also granted partial summary judgment as to that portion of Count I which claimed damages arising from the child abuse reports filed by the physicians.

On appeal, plaintiffs first complain of the dismissal of their breach of warranty count. We believe that the trial court properly granted defendants' motion for summary judgment as to this count on the grounds of redundancy. The breach of warranty count alleged that the defendant doctors either expressly or impliedly warranted that they would conform to the applicable standard of practice. Contrary to the plaintiffs' assertions, this claim was not "grounded upon the ancient actions of deceit and/or misrepresentation". Rather, the claim was simply a reworded form alleging malpractice, and thus clearly redundant to Count I of the complaint. A similar situation was presented to this Court in *Grewe v Mt Clemens General Hospital,* 47 Mich App 111; 209 NW2d 309 (1973), and was disposed of in the following manner:

"The second argument raised by the plaintiff is that the trial court erred by striking the second count of plaintiff's complaint which alleged that the defendants had breached an implied contract. However, the standard used to determine whether a physician has breached an implied contract is the same as the standard employed to determine whether a physician is guilty of malpractice. (See *Miller v Toles,* 183 Mich 252 [1914], and *Abbe v Woman's Hospital Ass'n,* 35 Mich App 429 [1971]). The second count of plaintiff's complaint is therefore redundant, and the trial court did not err by striking it." 47 Mich App 113-114.

As in *Grewe,* the trial court ruled properly in granting the motion for summary judgment.

Plaintiffs next attack the dismissal of their Count III pursuant to defendants' motion for summary judgment. They argue that the child abuse reporting statute, MCL 722.625, MSA 25.248(5), does not preclude recovery of damages for filing an erroneous child abuse report if that filing was the result of the malpractice of the defendant. We disagree.

MCL 722.625; MSA 25.248(5) provides in pertinent part:

"A person acting in good faith who makes a report or assists in any other requirement of this act shall be immune from civil or criminal liability which might otherwise be incurred thereby. A person making a report or assisting in any other requirement of this act shall be presumed to have acted in good faith. This immunity from civil or criminal liability extends only to acts done pursuant to this act and does not extend to a negligent act which causes personal injury or death or to the malpractice of a physician which results in personal injury or death."

The act clearly and unambiguously provides immunity to persons who file a child abuse report in good faith. Plaintiffs do not allege that the defen-

dants acted in bad faith in filing the reports here in question. Rather, the reports were filed due to an allegedly negligent diagnosis of the cause of the minor plaintiff's frequent bone fractures. Such an allegation cannot, as a matter of law, successfully avoid the immunity provided by the child abuse reporting statute. Therefore, the motion for summary judgment as to Count III was properly granted.

Plaintiffs' final argument is that the immunity provision of the child abuse reporting statute does not preclude recovery for consequential damages such as shame and humiliation arising from the erroneous child abuse report. In support, plaintiffs point to that portion of the reporting statute which states that the immunity from liability "does not extend * * * to the malpractice of a physician which results in personal injury or death". While plaintiffs' argument may have some conceptual support, it is clear that the above-quoted portion of the statute was not intended to apply to personal injuries resulting from the filing of an erroneous report, but rather to injuries which result *directly* from the malpractice. If, for example, the failure to properly diagnose Shawn's disease fell below the applicable standard of care, then the fracture he sustained when the toy was dropped on his toe would not be subject to the immunity protection, assuming the other requisites of causation and proximate cause could be satisfied. Such an injury results directly from the malpractice. The shame and humiliation alleged by plaintiffs, on the other hand, result directly from the filing of an erroneous child abuse report and only consequentially from the malpractice.

That plaintiffs should be permitted to seek damages only for the direct results of any malpractice is unquestionable for several reasons. First, if

plaintiffs' argument were accepted, the immunity granted to a physician who files a child abuse report would be entirely emasculated since a litigant could always assert that an incorrect diagnosis of child abuse constituted malpractice. Thus the public policy behind the statute, *i.e.,* to encourage reporting of suspected child abuse, would be defeated. Furthermore, physicians would be placed in a quandary since MCL 722.623(1); MSA 25.248(3)(1) provides that a physician who has "reasonable cause to suspect" child abuse *must* make a report, and he must do so "immediately". The failure to comply with the mandate may result in civil or criminal liability, pursuant to MCL 722.633(1) and (2); MSA 25.248(13)(1) and (2). Thus, plaintiffs' interpretation of the immunity provided by the statute would place physicians in the unenviable position of facing liability regardless of the course of action chosen.

We therefore conclude that plaintiffs' argument is untenable. When the defendants were unable to make a positive diagnosis of Osteogenesis Imperfecta, the only reasonable explanation for the plaintiff's injuries was child abuse. Defendants were therefore *required* to file a suspected child abuse report. Under these circumstances, the lack of bad faith is self-evident. Defendants were therefore fully entitled to the protection granted by MCL 722.625, the immunity portion of the statute. Since the trial court's interpretation of the law was correct, defendants' motion for partial summary judgment as to the portion of Count I seeking consequential damages resulting from the filing of the suspected child abuse report was properly granted.

Affirmed.