DeCAMINADA v COOPERS & LYBRAND, LLP

Docket No. 200089. Submitted June 10, 1998, at Detroit. Decided November 17, 1998, at 9:00 A.M.

Joseph E. DeCaminada brought an action in the Wayne Circuit Court against Coopers & Lybrand, L.L.P., and others, alleging age discrimination and conversion as a result of Coopers & Lybrand's termination of his employment. The defendants did not file an answer but, instead, filed a motion to compel arbitration, alleging that the plaintiff had signed an agreement containing a valid arbitration clause. The court, Sean F. Cox, J., denied the defendants' motion. The defendants sought leave to appeal. The plaintiff then moved for entry of a default and entered a default in the trial court on the basis of the defendants' failure to file a timely answer. The plaintiff then moved to dismiss the application for leave to appeal. The Court of Appeals, in lieu of deciding the motion to dismiss, granted the application for leave to appeal and instructed the parties to address in their appellate briefs the issue of the effect of the default.

The Court of Appeals *held*:

1. The motion to compel arbitration was a motion under MCR 2.116. Once the defendants filed a timely application for leave to appeal, the time for filing an answer was extended until after the application was resolved. MCR 2.108(C)(1). Thus, the plaintiff's entry of a default was improper, and the Court of Appeals therefore declined to dismiss the defendants' appeal.

2. The trial court erred in denying the motion to compel arbitration. The arbitration clause in the parties' agreement is enforceable under a section of the Federal Arbitration Act, 9 USC 2. The exclusionary language in another section of the act, 9 USC 1, does not apply to the agreement in this case. The plaintiff's claims are arguably covered by the language in the parties' agreement.

3. An arbitration clause is enforceable under the Federal Arbitration Act, regardless of whether a plaintiff was specifically aware of the scope of the clause, unless the plaintiff can show grounds for

revocation. Here, the plaintiff did not assert any grounds for revocation.

4. Where, as here, the Federal Arbitration Act applies, it preempts any state law or policy that specifically invalidates arbitration agreements. Therefore, the plaintiff's argument that the arbitration agreement violates Michigan public policy must fail.

Reversed.

1. PLEADING — MOTIONS — APPEAL.

A defendant generally must serve and file an answer or take other action permitted by law or the Michigan Court Rules within twenty-one days after being served with a summons and a copy of the complaint in Michigan; if, before filing a responsive pleading, the defendant brings a motion for summary disposition under MCR 2.116 and the motion is denied, the defendant must serve and file a responsive pleading within twenty-one days after notice of the denial; if the defendant files an application for leave to appeal within twenty-one days after notice of the denial, the time for filing the responsive pleading is extended until twenty-one days after the denial of the application unless the appellate court orders otherwise (MCR 2.108[A][1],[C][1]).

2. ARBITRATION — CONSTITUTIONAL LAW — FEDERAL ARBITRATION ACT.

The Federal Arbitration Act governs actions in both federal and state courts arising out of contracts involving interstate commerce; state courts are bound under the Supremacy Clause to enforce the substantive provisions of the act; the exclusionary clause of the act contained in 9 USC 1 that excludes application of the act to certain employees is limited to employees directly engaged in the movement of goods in interstate commerce (US Const, art VI, cl 2; 9 USC 1-15).

3. ARBITRATION — CONSTITUTIONAL LAW — FEDERAL ARBITRATION ACT — KNOWLEDGE OF ARBITRATION AGREEMENT.

The Federal Arbitration Act preempts any state law or policy that specifically invalidates arbitration agreements governed by the act; an arbitration clause in an agreement is enforceable under the act, regardless of whether a plaintiff is specifically aware of the scope of the clause, unless the plaintiff can show grounds for revocation (US Const, art VI, cl 2; 9 USC 2).

4. ARBITRATION — CONTRACTS.

A court, to ascertain the arbitrability of an issue, must consider whether there is an arbitration provision in the parties' contract,

whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract; any doubts about the arbitrability of an issue should be resolved in favor of arbitration.

*Morris & Doherty, P.C.* (by *E. Michael Morris* and *Paul F. Doherty*), and *Morganroth & Morganroth* (by *Mayer Morganroth*), for the plaintiff.

*Honigman Miller Schwartz and Cohn* (by *Ronald S. Longhofer* and *Amy B. Folbe*), for the defendants.

Before: WAHLS, P.J., and HOLBROOK, JR., and FITZGERALD, JJ.

WAHLS, P.J. In this age discrimination and conversion action, defendants appeal by leave granted from an order denying their motion to compel arbitration. We reverse.

The facts of the underlying lawsuit are not at issue on appeal. Essentially, plaintiff worked for defendant Coopers & Lybrand, L.L.P., for over thirty years before he was terminated. Plaintiff then filed suit alleging that his termination was the product of age discrimination and that defendants wrongfully converted his former clients. It is undisputed that plaintiff signed an arbitration agreement in which he agreed to arbitrate certain claims against defendant Coopers & Lybrand. In response to plaintiff's complaint, defendants filed a motion to compel arbitration. The trial court denied defendants' motion without explanation. We granted defendants' subsequent application for leave to appeal.

Before addressing the trial court's decision to deny defendants' motion to compel arbitration, we must

address a procedural matter. Defendants did not originally file an answer to plaintiff's complaint. Instead, they filed their motion to compel arbitration, and, when their motion was denied, filed an application for leave to appeal. After defendants filed their application, plaintiff moved for entry of a default and entered a default below. Plaintiff then filed a motion to dismiss defendants' application for leave to appeal, arguing that, after the default, the court rules prohibited defendants from pursuing their appeal. In lieu of deciding plaintiff's motion to dismiss, this Court granted the application for leave to appeal and instructed the parties to address the issue in their appellate briefs. Having reviewed plaintiff's argument, we conclude that he misinterprets the court rules.

Generally, a defendant "must serve and file an answer or take other action permitted by law or these rules within 21 days after being served . . . ." MCR 2.108(A)(1). However,

> [w]hen a motion . . . is filed, the time for pleading set in [MCR 2.108(A)] is altered as follows, unless a different time is set by the court:
>
> (1) If a motion under MCR 2.116 made before filing a responsive pleading is denied, the moving party must serve and file a responsive pleading within 21 days after notice of the denial. However, if the moving party, within 21 days, files an application for leave to appeal from the order, the time is extended until 21 days after the denial of the application unless the appellate court orders otherwise. [MCR 2.108(C)(1).]

Here, despite plaintiff's protestations, defendants' motion to compel arbitration was a motion under

MCR 2.116.    See MCR 2.116(C)(7).[1] Thus, once defendants filed a timely application for leave to appeal, the time for filing an answer was extended until after the application was resolved. Under these circumstances, plaintiff's entry of a default was improper, and we decline to dismiss defendants' appeal.[2]

Defendants raise only one issue on appeal. They argue that plaintiff signed a "Partners and Principals Agreement" containing a valid arbitration clause and, therefore, that the trial court erred in denying their motion to compel arbitration. We agree.

We review a trial court's grant or denial of a motion for summary disposition pursuant to MCR 2.116(C)(7) de novo to determine whether the moving party was entitled to judgment as a matter of law. *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997).   The Federal Arbitration Act (FAA), 9 USC 1-15,  governs actions in both federal and state courts arising out of contracts involving interstate commerce. *Burns v Olde Discount Corp*, 212 Mich App 576, 580; 538 NW2d 686 (1995).   To ascertain the arbitrability of an issue, a court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether

---

[1] The fact that the motion was not labeled as one for summary disposition under MCR 2.116(C)(7)  is irrelevant. MCR 2.116(C)(7) authorized the motion, regardless of how it was labeled.

[2] Alternatively, even if plaintiff's entry of a default had been proper, plaintiff has not cited anything in the court rules suggesting that a default divests this Court of jurisdiction to consider a properly filed application for leave to appeal.

the dispute is expressly exempt from arbitration by the terms of the contract. *Id.* Any doubts about the arbitrability of an issue should be resolved in favor of arbitration. *Id.*

Here, plaintiff signed a Partners and Principals Agreement that included the following arbitration clause:

> Any claim or controversy not specifically provided for in Section 12.2[3] arising out of the provisions of this Agreement, the interpretation thereof, or the practice, business or affairs of the Firm shall be settled by arbitration in New York, New York, in accordance with the rules of the American Arbitration Association then in effect. Judgment may be entered upon the award granted in such arbitration and such award may be enforced in any court having jurisdiction.

Another clause states that the agreement "shall be governed by the laws of the State of New York."

Defendants rely on the FAA for the proposition that the arbitration clause in the Partners and Principals Agreement is enforceable. Specifically, they rely on 9 USC 2, which states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable,

---

[3] The parties appear to agree that § 12.2 does not apply to plaintiff's claims.

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Plaintiff argues that the FAA does not apply, citing 9 USC 1, which defines the term "commerce." That section provides, in part: "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Defendants respond that the Partners and Principals Agreement is not an employment contract and that, even if it is, it is not a contract of a "class of workers engaged in foreign or interstate commerce." We believe that defendants have the better argument.

State courts are bound, under the Supremacy Clause, US Const, art VI, cl 2, to enforce the FAA's substantive provisions. *Kauffman v Chicago Corp*, 187 Mich App 284, 286; 466 NW2d 726 (1991). While there is some disagreement in the federal courts regarding the scope of the exclusionary language in 9 USC 1, it seems clear to us that it does not apply to the Partners and Principals Agreement in this case. Plaintiff simply cannot show that the agreement was a contract of employment of a "class of workers engaged in foreign or interstate commerce."

We have not found any Michigan cases addressing the scope of the exclusionary provision in 9 USC 1. However, the Sixth Circuit Court of Appeals has adopted a narrow construction of that clause. *Asplundh Tree Expert Co v Bates*, 71 F3d 592, 600-601 (CA 6, 1995). After a lengthy review of other cases, the court summarized its analysis:

> We conclude that the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are. We believe this interpretation comports with the actual language of the statute and the apparent intent of the Congress which enacted it. The meaning of the phrase "workers engaged in foreign or interstate commerce" is illustrated by the context in which it is used, particularly the two specific examples given, seamen and railroad employees, those being two classes of employees engaged in the movement of goods in commerce. [*Id.*]

We find the reasoning in *Asplundh* persuasive, and we adopt it as our own. Thus, we conclude that the exclusionary provision in 9 USC 1 is limited to employees directly engaged in the movement of goods in interstate commerce. Clearly, plaintiff is not such an employee, and the exclusionary provision does not apply to the Partners and Principals Agreement in this case.[4]

Plaintiff also argues that his claims are outside the scope of the agreement to arbitrate. Plaintiff's argument can succeed only if we adopt a very narrow reading of the arbitration clause. This, we decline to do. As noted above, any doubts about the arbitrability of an issue should be resolved in favor of arbitration. Here, the parties agreed to arbitrate claims "arising out of . . . the practice, business or affairs of the Firm

---

[4] The parties also dispute whether the Partners and Principals Agreement is a "contract of employment" at all. Because it is clear that plaintiff is not a member of a class of workers engaged in foreign or interstate commerce, we need not address this issue.

. . . ." Plaintiff's claims are arguably covered by this language, and, resolving any doubts in favor of arbitration, the trial court should have granted defendants' motion to compel arbitration.

Plaintiff also asserts that he did not knowingly and voluntarily agree to arbitrate these claims. His argument rests on an opinion from the Ninth Circuit Court of Appeals, *Prudential Ins Co of America v Lai*, 42 F3d 1299 (CA 9, 1994), where the court concluded that an arbitration clause is not binding unless the plaintiffs "knowingly contract to forego their statutory remedies in favor of arbitration." *Id.* at 1305. With due respect to the Ninth Circuit Court of Appeals, there is nothing in the language of the FAA to support a "knowledge" requirement. Under the FAA, an arbitration clause "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 USC 2 (emphasis added). Thus, an arbitration clause is enforceable, regardless of whether a plaintiff is specifically aware of its scope, unless the plaintiff can show grounds for revocation. See *Beauchamp v Great West Life Assurance Co*, 918 F Supp 1091 (ED Mich, 1996).[5] Here, plaintiff has not asserted any

---

[5] We agree with the sentiments expressed by the court in *Beauchamp, supra* at 1096, 1098:

Fortunately, *Prudential* is not binding precedent because this court is not persuaded by its reasoning. The portions of the legislative history relied upon by the Ninth Circuit are slender reeds upon which to rest the weighty and novel conclusion that an arbitration clause is only binding when the claimant has actual knowledge that his particular employment discrimination claims will be covered by the agreement. This conclusion flies in the face of the language of the Civil Rights Act of 1991, the Supreme Court's opinion in *Gilmer*

grounds for revocation of the Partners and Principals Agreement, and the arbitration clause is enforceable.

Finally, plaintiff argues that the arbitration agreement violates Michigan public policy. Plaintiff relies on an opinion by Justice CAVANAGH in *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405; 550 NW2d 243 (1996), and on two subsequent cases from this Court, *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156; 570 NW2d 271 (1997), and *Rembert v Ryan's Family Steakhouse, Inc*, 226 Mich App 821; 575 NW2d 287 (1997). However, the FAA did not apply in any of these cases. *Heurtebise, supra* at 419; *Rushton, supra* at 166; *Rembert, supra* at 825.[6] This is a crucial distinction, because application of the FAA implicates the Supremacy Clause, which precludes us from applying our state constitution or laws to defeat

---

[*v Interstate/Johnson Lane Corp*, 500 US 20; 111 S Ct 1647; 114 L Ed 2d 26 (1991)], and fundamental principles of contract law.

\*     \*     \*

Accordingly, this court chooses not to treat *Prudential* as persuasive precedent, instead holding, consistently with *Gilmer*, that a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge.

[6] We note that Justice CAVANAGH's opinion in *Heurtebise* was not binding on us initially, because it was signed by only three justices. However, the panel in *Rushton* adopted Justice CAVANAGH's opinion, making it binding on subsequent panels pursuant to MCR 7.215(H)(1). When the panel in *Rembert* addressed this issue, it declared a conflict with *Rushton*, pursuant to MCR 7.215(H)(2). The *Rembert* panel would have concluded that prospective arbitration agreements in employment contracts are not barred by public policy. *Rembert, supra* at 822-823. The opinion in *Rembert* has since been vacated, and a conflict panel has been convened. *Id.* at 821-822. However, the conflict panel has not yet issued a decision.

federal legislation. US Const, art VI, cl 2. Thus, as the United States Supreme Court has held, where the FAA applies, it preempts any state law or policy that specifically invalidates arbitration agreements. *Doctor's Associates, Inc v Casarotto*, 517 US 681, 686-688; 116 S Ct 1652; 134 L Ed 2d 902 (1996).[7] The Michigan public policy cited by Justice CAVANAGH in *Heurtebise* would specifically invalidate prospective arbitration clauses to the extent they apply to civil rights claims. Because the FAA applies in this case, this public policy is clearly preempted,[8] and plaintiff's argument must fail.

Because plaintiff's claims were subject to a valid and enforceable arbitration agreement under the FAA, the trial court erred in denying defendants' motion to compel arbitration.

Reversed.

---

[7] As the Court noted in *Doctor's Associates*, state laws governing contracts in general do not conflict with the FAA simply because they also affect arbitration contracts. Such laws are not preempted. *Doctor's Associates, supra* at 686-687.

[8] Defendants also argue that Michigan public policy is inapplicable because New York law governs the agreement. Having concluded that federal law preempts Michigan public policy, we need not address this issue.