## LAVEY v MILLS

Docket No. 225883. Submitted May 22, 2001, at Marquette. Decided November 9, 2001, at 9:00 A.M.

Joseph F. Lavey, II, conservator for KB, a severely disabled child who cannot speak, has limited ability to walk, and requires diapering, brought an action in the Marquette Circuit Court against Diane Mills, a teacher's aide for the public school district that KB attends, Donna Beauchaine, a Michigan State Police trooper assigned to investigate criminal sexual abuse cases, Larry Pittman, a child protective services worker with the Family Independence Agency, and Ann Picotte, the principal of the school that KB attends. The plaintiff alleged that KB was falsely imprisoned by the defendants when she was taken to a doctor's office without parental consent or a court order, that a battery occurred when KB was subjected to a gynecological examination for suspected sexual abuse, and that KB's constitutional right to remain free from unreasonable searches and seizures was violated. The court, John R. Weber, J., granted summary disposition in favor of all the defendants on the basis that they were engaged in a good-faith investigation of possible child abuse. The plaintiff appealed.

The Court of Appeals *held*:

The grant of summary disposition to all the defendants regarding the constitutional claim and to Mills and Picotte on all remaining claims must be affirmed. The grant of summary disposition to Pittman and Beauchaine regarding the false imprisonment and battery claims must be reversed and the matter must be remanded for further proceedings regarding those claims.

1. The plaintiff failed to state a claim on which relief can be granted regarding the constitutional claim because no inferred damages remedy for a violation of a state constitutional right exists against individual government employees.

2. Picotte is entitled to immunity under § 5 of the Child Protection Law, MCL 722.625, because she simply reported suspected child abuse to the police and cooperated, in good faith, with the ensuing investigation. The parties do not dispute the grant of summary disposition to defendant Mills.

3. Beauchaine and Pittman are not entitled to the immunity granted under § 5 because they did not comply with the provisions of subsection 6(3) of the act, MCL 722.626(3), when they arranged for the gynecological examination without a court order.

4. The immunity from tort liability provided under MCL 691.1407(2) does not apply to intentional torts of individual government employees. The statute does not bar the battery and false imprisonment claims against Beauchaine and Pittman.

Affirmed in part, reversed in part, and remanded.

GOVERNMENTAL IMMUNITY — CHILD PROTECTION LAW — CHILD ABUSE REPORTS.

The statutory immunity from civil or criminal liability that applies to a person who makes a good-faith report of suspected child abuse and cooperates in an investigation thereof applies only to acts done pursuant to the Child Protection Law; a person who commits a clear violation of the Child Protection Law is not acting pursuant to the Child Protection Law and therefore is not entitled to the statutory immunity provided by the law (MCL 722.625).

*Richard C. Clark* and *Mary K. Vader*, for the plaintiff.

*Charles J. Palmer, P.C.* (by *Charles J. Palmer*), for Diane Mills.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark V. Schoen*, Assistant Attorney General, for Larry Pittman and Donna Beauchaine.

*Vairo, Mechlin, Tomasi, Johnson & Manchester* (by *David R. Mechlin*), for Ann Picotte.

Before: SAWYER, P.J., and SMOLENSKI and WHITBECK, JJ.

SMOLENSKI, J. Plaintiff Joseph F. Lavey, II, conservator for KB, a minor, appeals as of right from the trial court's order granting defendants summary disposition under MCR 2.116(C)(7). Plaintiff brought an action for false imprisonment, battery, and violation

of constitutional rights. The trial court concluded that defendants were immune from tort liability because they were engaged in a good-faith investigation of alleged child abuse. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the conservator for KB, a severely disabled child who cannot speak, has limited ability to walk, and requires diapering. When the relevant events occurred, she was nine years old. The instant case arises from defendants' attempts to investigate the possibility that KB was the victim of sexual abuse. Defendant Diane Mills is a teacher's aide in the special-education program for the public school district that KB attends. Defendant Ann Picotte is the school principal.[1] Defendant Donna Beauchaine is a Michigan State Police trooper assigned to investigate criminal sexual abuse cases. Defendant Larry Pittman is a child protective services worker with the Family Independence Agency (FIA).

On February 5, 1996, while changing KB's diaper, Mills noticed abnormal conditions in KB's genital area. Mills alerted the classroom teacher, Sandy Knoebel, who agreed that the conditions appeared abnormal. Mills and Knoebel then alerted Picotte about the problem. After observing the conditions, Picotte contacted the prosecutor's office to report her suspicion that KB was being sexually abused. The

---

[1] The record reveals various spellings of this party's name—Ann Picotte, Anne Picotte, and Anne Pecotte. For consistency purposes, we will employ the spelling utilized by plaintiffs.

prosecutor instructed Picotte to contact Trooper Beauchaine, and Picotte followed those instructions.[2] Trooper Beauchaine visited the school on February 9, 1996, and observed KB, as well. Beauchaine suspected that KB was being sexually abused. However, because KB was unable to communicate verbally, Beauchaine was unable to verify her suspicions without physical evidence. Beauchaine therefore asked the school to inform her immediately upon the discovery of further symptoms.

On April 23, 1996, Picotte contacted Beauchaine and reported that she and Mills had observed additional symptoms in KB's genital area, which suggested potential sexual abuse. Beauchaine directed Picotte to immediately transport KB to a doctor's office, assuring Picotte that the school had legal authority to do so. Beauchaine did not obtain a search warrant or a court order for the gynecological examination. Nor did Beauchaine investigate or determine what legal procedures she should have followed. Rather, Beauchaine contacted defendant Pittman at the FIA and asked him to meet her at the doctor's office. Pittman signed a consent form, purporting to be KB's legal guardian, authorizing the gynecological examination. Pittman later admitted that he signed the consent form despite the knowledge that he lacked authority to have KB examined by a doctor, absent parental consent or a court order.

Picotte and Mills transported KB to the doctor's office. When they arrived, Beauchaine and Pittman

---

[2] Neither the prosecutor nor Beauchaine instructed Picotte to contact the FIA. Apparently, Picotte refrained from contacting the FIA out of concern that the FIA would alert KB's parents, whom she suspected as the perpetrators of the suspected sexual abuse.

were already present. Mills and Beauchaine accompanied KB into an examining room, where a doctor performed a gynecological examination. That examination included oral, vaginal, and rectal swabs.[3] After the examination, Mills and Picotte transported KB back to school, while Beauchaine awaited the laboratory results. Later that day, Beauchaine obtained the laboratory results, which were negative for any evidence of sexual abuse. Beauchaine did not inform Mills, Picotte, or Pittman that the results were negative. Further, no one attempted to contact KB's parents, either before or immediately after the examination. However, Beauchaine met with KB's parents the following day, accusing KB's father of sexually molesting the child. No evidence of sexual abuse was ever discovered, and no criminal charges alleging sexual abuse were ever brought against KB's parents.

KB's conservator brought the instant action against Mills, Picotte, Beauchaine, and Pittman, alleging that (1) they falsely imprisoned KB by taking her to the doctor's office without parental consent or a court order, (2) they battered KB by subjecting her to a gynecological examination, and (3) they violated KB's constitutional right to remain free from unreasonable searches and seizures. Defendants Picotte, Beauchaine, and Pittman moved for summary disposition, arguing that they were immune from tort liability under the governmental immunity statute, MCL 691.1407(2), and § 5 of the Child Protection Law, MCL 722.625, and arguing that the alleged constitutional

---

[3] Mills testified that, because KB rarely showed emotion, it was difficult to tell whether she was uncomfortable. However, the doctor subsequently wrote a letter to Pittman in which she stated that she could not perform a complete examination because of KB's discomfort.

violation failed to state a claim on which relief can be granted. Although Mills did not move for summary disposition, the parties agreed that the trial court should dismiss plaintiff's claims against Mills if it dismissed plaintiff's claims against the other defendants.[4]

The trial court granted summary disposition in favor of all defendants, pursuant to MCR 2.116(C)(7). The trial court assumed, for purposes of deciding the motion, that defendants should have obtained a court order before subjecting KB to the gynecological examination. Nonetheless, the trial court held that defendants were immune from tort liability because they were engaged in a good-faith investigation of possible child abuse. Plaintiff appeals as of right.

We affirm the trial court's grant of summary disposition to all defendants on plaintiff's constitutional claim. We also affirm the trial court's grant of summary disposition to defendants Mills and Picotte on all remaining claims. We reverse the trial court's grant of summary disposition to defendants Pittman and Beauchaine on plaintiff's battery and false imprisonment claims. We remand to the trial court for further proceedings regarding those claims.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision granting or denying a motion for summary disposition under MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law.

---

[4] Plaintiff does not appeal the trial court's grant of summary disposition to defendant Mills. In fact, plaintiff's appeal brief states that Mills is "innocent" in this matter. Accordingly, we decline to review the trial court's order dismissing plaintiff's claims against Mills.

*DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 496; 591 NW2d 364 (1998), citing *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997). In making this determination, this Court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Barrow v Pritchard*, 235 Mich App 478, 480; 597 NW2d 853 (1999). Further, this Court must accept the contents of the complaint as true unless specifically contradicted by the documentary evidence. *Sewell v Southfield Public Schools*, 456 Mich 670, 674; 576 NW2d 153 (1998).

### III. CONSTITUTIONAL CLAIM

Plaintiff argues that the gynecological examination constituted an unreasonable search and seizure of KB's person and that defendants were liable for damages resulting from this alleged constitutional violation. However, our Supreme Court has clearly held that no inferred damages remedy for a violation of a state constitutional right exists against individual government employees. *Jones v Powell*, 462 Mich 329, 335; 612 NW2d 423 (2000). Therefore, with regard to the alleged constitutional violation, plaintiff has failed to state a claim on which relief can be granted. MCR 2.116(C)(8). The trial court did not dismiss plaintiff's claim on this ground. Nevertheless, "[w]hen this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning." *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998). We therefore hold that the trial court properly granted summary disposition to all defendants on plaintiff's constitutional claim.

IV. THE CHILD PROTECTION LAW

The Child Protection Law, MCL 722.621 *et seq.*, outlines various requirements regarding the reporting and investigation of suspected child abuse. One section of the statute grants immunity from tort liability in relation to such reporting and investigation. Section 5 of the act, MCL 722.625, provides, in pertinent part:[5]

> A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action. A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith. This immunity from civil or criminal liability extends only to acts done pursuant to this act and does not extend to a negligent act that causes personal injury or death or to the malpractice of a physician that results in personal injury or death.

The trial court relied on this statutory language when it granted summary disposition to defendants. Concluding that each of the defendants had acted in good faith, the trial court held that defendants were entitled to the statutory immunity. Plaintiff challenges that holding, arguing that defendants are not entitled to the statutory immunity because they were not acting in good faith and because their actions were neither required nor authorized by the provisions of the Child Protection Law.

---

[5] We apply the statutory language in effect on April 23, 1996, because plaintiff's complaint is based solely on the events that occurred that day. A subsequent amendment of the statutory language is not pertinent to the present case. See 1998 PA 428.

Very few published opinions have examined the immunity granted by MCL 722.625 and that case law explains that good-faith reporting of suspected child abuse and good-faith cooperation with an investigation into suspected child abuse are activities that render a person immune from tort liability. However, in the present case, we must examine the statutory language to determine whether the immunity extends to good-faith acts that violate other requirements set forth in the Child Protection Law. We conclude that it does not.

### A. DEFENDANT PICOTTE

Defendant Picotte argues that she simply reported suspected child abuse to the police and cooperated, in good faith, with the ensuing investigation. Thus, she argues that she is entitled to immunity under the Child Protection Law. We agree.

In *Awkerman v Tri-County Orthopedic Group, PC*, 143 Mich App 722, 724; 373 NW2d 204 (1985), a five-year-old boy suffered several bone fractures over a short period and his treating physicians reported suspected child abuse. The child was removed from his mother's custody, but was later returned when he was diagnosed with brittle-bone disease. *Id.* The child and his mother brought an action against the physicians for the wrongful reporting of suspected child abuse and resultant removal of the child from his mother's custody. *Id.* at 724-725. This Court applied MCL 722.625 and concluded that the physicians were immune from liability, having acted in good faith. *Awkerman, supra* at 726-727. In resolving the case, this Court noted that the public policy behind the statute was "to encourage reporting of suspected

child abuse . . . ." *Id.* at 728. To further that policy, "[t]he act clearly and unambiguously provides immunity to persons who file a child abuse report in good faith." *Id.* at 726.

In *Warner v Mitts*, 211 Mich App 557, 560; 536 NW2d 564 (1995), this Court held that the statutory immunity "extends not only to the making of the report but also to a party's cooperation in an investigation." In that case, the plaintiffs brought a slander suit against the defendant, alleging that he falsely reported to the Department of Social Services (DSS) that one of the plaintiffs had sexually abused the plaintiffs' minor daughter. *Id.* at 558. During the DSS investigation, the defendant also accused the other plaintiff of being mentally ill and alleged that both plaintiffs had solicited the defendant to participate in certain sexual acts. *Id.* This Court affirmed the trial court's grant of summary disposition to the defendant, holding that the plaintiffs had failed to overcome the statutory presumption that the defendant was acting in good faith. *Id.* at 559-560. This Court concluded that the statutory grant of immunity was not limited to the defendant's initial report of suspected abuse, but extended to additional reports rendered in cooperation with an abuse investigation. *Id.*

In the present case, KB's teacher informed Picotte that KB was exhibiting unusual conditions in her genital area. This constituted reasonable cause to suspect that KB might be the victim of sexual abuse. In *Warner, supra* at 559, this Court held:

> [A] person who has "reasonable cause to suspect child abuse" is by definition "acting in good faith" when reporting the suspicions. Thus, immunity extends to reports of "sus-

pected" child abuse regardless of the outcome of a subsequent investigation.

Despite the fact that no charges were ever filed against KB's parents regarding the alleged child abuse, we conclude that Picotte was acting in good faith when she reported the situation to the county prosecutor and the police.

After reporting the matter, Picotte simply cooperated with the investigation. She reported later incidents of suspected abuse, as directed by Beauchaine. She transported KB to the doctor's office at Beauchaine's direction, and only after Beauchaine assured her that she had the legal authority to do so. Under the Child Protection Law, schools are required to cooperate with investigations of suspected child abuse. MCL 722.628(8). That cooperation "includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent abuse or neglect of the child." *Id.* We conclude that Picotte acted in good faith when she transported KB to the doctor's office, at Beauchaine's direction, without first obtaining the consent of KB's parents.

Summary disposition is appropriate when reasonable minds could not differ. *Vermilya v Dunham,* 195 Mich App 79, 83; 489 NW2d 496 (1992). Under these circumstances, reasonable minds could not differ in concluding that Picotte acted in good faith and in compliance with the Child Protection Law when reporting the suspected abuse and cooperating with the investigation. *Awkerman, supra; Warner, supra.* Accordingly, we conclude that the trial court properly granted summary disposition in favor of defendant Picotte.

## B. DEFENDANTS BEAUCHAINE AND PITTMAN

Like defendant Picotte, defendants Beauchaine and Pittman argue that they are entitled to immunity from tort liability under MCL 722.625. They argue that they were either investigating a report of suspected child abuse or cooperating with such an investigation, and that they were acting in good faith. The trial court agreed, holding that plaintiff had failed to overcome the statutory presumption that Beauchaine and Pittman had acted in good faith. We conclude that defendants Beauchaine and Pittman are not entitled to immunity under § 5.

First, defendants Beauchaine and Pittman argue that they are entitled to statutory immunity because they were acting pursuant to subsection 6(2) of the act, MCL 722.626(2), when they authorized KB's gynecological examination. Section 6 provides, in pertinent part:

> (2) When a child suspected of being an abused or neglected child is seen by a physician, the physician shall make the necessary examinations, which may include physical examinations, x-rays, photographs, laboratory studies, and other pertinent studies. The physician's written report to the department shall contain summaries of the evaluation, including medical test results.
>
> (3) If a report is made by a person other than a physician, or if the physician's report is not complete, the department may request a court order for a medical evaluation of the child. The department shall have a medical evaluation made without a court order if the child's health is seriously endangered and a court order cannot be obtained.

Defendants Beauchaine and Pittman argue that KB's gynecological examination was authorized by subsection 6(2) because it was performed by a doc-

tor, after a report of suspected child abuse had been filed. However, defendants' argument ignores subsection 6(3). That subsection of the statute applies when a report of suspected child abuse "is made by a person other than a physician . . . ." MCL 722.626(3). Because Mills and Picotte reported the suspected abuse, subsection 6(3) applies to the present case.

Subsection 6(3) provides that a medical evaluation of a child who is suspected of being abused may be performed without a court order only "if the child's health is seriously endangered *and* a court order cannot be obtained." MCL 722.626(3) (emphasis added). Defendants Beauchaine and Pittman did not comply with subsection 6(3). It is undisputed that they did not seek a court order authorizing the examination. They produced no evidence that KB's health was seriously endangered. Finally, they produced no evidence that a court order could not have been obtained.[6] Thus, it is clear that Beauchaine and Pittman violated § 6 when they arranged for KB's gynecological examination without a court order.

The question then becomes whether the statutory immunity provided in § 5 applies to defendants who have violated other requirements of the Child Protection Law, such as subsection 6(3). We conclude that it does not. Section 5 clearly provides that "immunity from civil or criminal liability extends only to acts done pursuant to this act . . . ." We cannot conclude that defendants Beauchaine and Pittman acted "pursuant to" the Child Protection Law when they committed a clear violation of subsection 6(3). Because

---

[6] According to plaintiff's brief, the gynecological examination occurred during regular business hours, on a week day, when the courts presumably would have been open for business.

they were not acting "pursuant to" the Child Protection Law, they are not entitled to the immunity contained in § 5. Therefore, the trial court erroneously granted summary disposition to defendants Beauchaine and Pittman on the basis of statutory immunity.

Defendants Beauchaine and Pittman also argue that they are immune from tort liability under MCL 691.1407(2). However, that immunity does not apply to intentional torts of individual government employees. *Sudul v Hamtramck*, 221 Mich App 455, 458, 481; 562 NW2d 478 (1997). We therefore conclude that MCL 691.1407(2) does not bar plaintiff's battery and false imprisonment claims.

Finally, defendants Beauchaine and Pittman argue that they were entitled to summary disposition on plaintiff's battery and false imprisonment claims, even if they do not enjoy immunity under the Child Protection Law. However, because the trial court neither considered nor decided this issue, we decline to address it at the present time. Defendants Beauchaine and Pittman may raise these arguments before the trial court on remand.

We affirm the trial court's grant of summary disposition to all defendants on plaintiff's constitutional claim. We also affirm the trial court's grant of summary disposition to defendants Mills and Picotte on all remaining claims. We reverse the trial court's grant of summary disposition to defendants Beauchaine and Pittman on plaintiff's battery and false imprisonment claims. We remand to the trial court for further proceedings regarding those claims.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.