*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA ARNOLD, Individually and as Next
Friend of MINOR DOE, a minor,

UNPUBLISHED
August 27, 2025
10:44 AM

Plaintiffs-Appellants,

v

No. 371449
Washtenaw Circuit Court
LC No. 24-000377-NO

TRINITY HEALTH-MICHIGAN, and
KAITLYN RYAN, M.D.,

Defendants-Appellees.

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Appellants, Rebecca Arnold (Mother) and Minor Doe (Doe), appeal an order granting summary disposition to appellees, Trinity Health-Michigan (Hospital) and Kaitlyn Ryan, M.D. (Doctor), pursuant to MCR 2.116(C)(7) and (C)(8). We affirm.

## I. BACKGROUND

Doe is Mother's child. At the time of the filing of the complaint in this case, Doe was 14 years old. It is uncontested that Doe has a complicated mental health history. The complaint summarizes that history since 2017, including several of the steps Mother has taken to secure care for Doe—such as enlisting remote treatment from an out-of-state specialist. In early 2023, Doe spent several months in a residential treatment program. At discharge, the care providers recommended that Doe continue care in a partial hospitalization program (PHP) and enter dialectical behavioral therapy (DBT). Mother selected Hospital to provide PHP services, but communicated to Hospital staff that she wanted Doe to continue with the medication management program that had been established by Doe's previous providers.

On May 3, 2023, Doctor led Doe's intake meeting at Hospital and, per the complaint, had immediate concerns about Doe's medication regimen—particularly the use of Lithium and Latuda. Doctor recommend a DBT group for Doe, but on May 10, 2023, spoke to Mother over the phone to notify Mother that Doe was being disruptive during those sessions; during that same phone call, Doctor informed Mother that, based on her observations, Doctor disagreed with Doe's prior

-1-

diagnoses and treatment plan. Mother refused Doctor's proposed treatment plan, wishing to continue the current medication regimen; as stated in the complaint, Mother told Doctor that the prior recommendations were "the only options that she was willing to follow, and that anything else was completely out of the question." Mother estimates that she argued over the phone with Doctor for 30 minutes, eventually consenting to potentially putting Doe on a higher dose of one of her current medications. During a May 12, 2023 therapy session, Mother recounted the argument to Doctor's coworker and said that she planned to file an internal complaint about Doctor. Mother and Doe returned home after the session.

On May 13, 2023, a Child Protective Services (CPS) worker visited Mother and Doe at their home to conduct an investigation prompted by a report Doctor had made to CPS. Although the report itself is not in the record on appeal, the parties do not dispute that Doctor reported that she was worried that Mother had factitious disorder imposed on another; did not believe that Doe experienced the mental health disorders that Mother represented, including bipolar disorder and psychosis; and was concerned about the dangers to Doe from the total number, and dosages, of Doe's prescribed medications.

Mother (individually, and as the Next Friend of Doe) filed the instant lawsuit against Doctor and Hospital, alleging defamation, intentional infliction of emotional distress, negligent inflection of emotional distress, and a theory of respondeat superior. Appellants alleged that Doctor's report was false, retaliatory, and in bad faith, and as a result of it, Doe had to witness Mother being questioned about abuse and neglect. According to appellants, Doctor's report caused Mother to suffer severe distress and emotional anxiety that Doe's previously effective treatment plan was now in jeopardy, and caused Doe to suffer extreme emotional distress, extreme distrust of doctors, and increased anxiety in seeking out medical care—as evidenced by the fact that Doe became anxious and very hesitant with respect to a subsequent dental procedure, and also does not want to be alone with her therapist.

In lieu of an answer, appellees moved for summary disposition under MCR 2.116(C)(7) and (C)(8). Broadly, appellees contended that they were immune from civil liability for mandatorily reporting acts of suspected child abuse pursuant to Michigan's Child Protection Law (CPL), MCL 722.621 *et seq*. The trial court conducted a hearing on the motion for summary disposition on June 5, 2024, ultimately making an oral ruling granting the motion. The court then issued a written order of dismissal with prejudice later that the same day. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). Under MCR 2.116(C)(7),[1] the moving party is entitled to summary disposition if, as relevant here, the plaintiff's claims are

---

[1] As stated above, appellees also moved for summary disposition under MCR 2.116(C)(8). Although the trial court did not make clear under which subrule appellees' motion was granted, we conclude, for the reasons set forth in this opinion, that appellees are entitled to summary disposition under subsection (C)(7); accordingly, we need not—and do not—address whether summary disposition is warranted under subsection (C)(8) as well.

barred because of "immunity granted by law." The moving party may support its motion with "affidavits, depositions, admissions, or other documentary evidence," but "[t]he contents of the complaint are accepted as true unless contradicted" by the evidence provided. *Doe v Gen Motors, LLC*, 511 Mich 1038, 1039 (2023). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effects of the facts, whether the claim is barred is an issue of law for the court." *Id.* "But if a question of fact exists so that factual development could provide a basis for recovery, caselaw states that dismissal without further factual development is inappropriate." *Id.*

## III. DISCUSSION

This case requires us to examine the contours of Michigan's CPL, MCL 722.621 *et seq.* "[T]he public policy behind the [CPL] . . . is to encourage reporting of suspected child abuse." *Warner v Mitts*, 211 Mich App 557, 559; 536 NW2d 564 (1995). To help ensure reporting, the CPL creates mandatory reporting requirements for individuals serving in various enumerated capacities. See MCL 722.623(1). The parties in this case do not dispute that Doctor was a mandatory reporter under the CPL. The CPL provides that any person that qualifies as a mandatory reporter "who has reasonable cause to suspect child abuse or child neglect shall make an immediate report" of the suspected abuse. MCL 722.623(1)(a). A mandatory reporter faces potential civil and criminal liability for failing "to report an instance of suspected child abuse or neglect." MCL 722.633. And the CPL extends immunity to those who report in good faith. As MCL 722.625 provides, in relevant part:

> A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action. A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith. This immunity from civil or criminal liability extends only to acts done according to this act and does not extend to a negligent act that causes personal injury or death or to the malpractice of a physician that results in personal injury or death.

The trial court granted appellees summary disposition on the basis of this immunity. According to appellants, the court erred by doing so because (1) Doctor's CPS report was not based on a reasonable suspicion of child abuse but was instead motivated by retaliatory animus against Mother, and (2) the report was not made immediately, as required by the CPL. For each of these reasons, appellants maintain, Doctor was not entitled to immunity under MCL 722.625. We disagree with appellants' position and conclude that appellees were properly granted summary disposition in this case.

### A. RETALIATION AND REASONABLE SUSPICION

We first address appellants' claim that Doctor acted in bad faith when she made the report to CPS because the report was motivated by personal animosity toward Mother. Appellants argue that Doctor filed the CPS report not due to any reasonable suspicion of child abuse, but in retaliation for Mother's threat to report Doctor's conduct to Doctor's supervisor, and because Mother generally refused to follow Doctor's medical advice. According to appellants' version of events, Doctor made the report shortly after a particularly contentious phone call with Mother

regarding Doe's care, followed by Mother informing Doctor's coworker that she intended to file a formal complaint about Doctor.

Even accepting appellants' version of events as true, they do not show that Doctor acted in bad faith such that she would not be entitled to immunity under the CPL for her report. As noted, a person making a report under the CPL is presumed to have acted in good faith. See MCL 722.625. And as this Court has previously held, " 'good faith' pertains to the existence of a reasonable suspicion, not the motive behind the decision to report," and so a "defendant's alleged animosity toward [the] plaintiffs d[oes] not render [the] defendant's reporting one of bad faith." *Warner*, 211 Mich App at 560. Accordingly, if Doctor had reasonable suspicion to make a report in this case, she would be entitled to immunity even if she also had, as appellants alleged, a retaliatory motive for doing so.

As to reasonable suspicion, there is no meaningful dispute that Doctor had significant concerns about Doe's prior diagnoses and medication regimen, which Doctor assessed to be misguided and unduly dangerous for Doe. And, as appellants alleged in their complaint, Doctor's report came on the heels of a contentious conversation between Mother and Doctor about these concerns, in which Mother insisted that any change "was completely out of the question" while ultimately agreeing to only one "potential[]" dosage adjustment of one of the medications. Appellants strongly disagree with Doctor's concerns regarding Doe's treatment and Mother's role in it. But they do not contest that those collective concerns, if they were correct as reported, would require mandatory reporting under the CPL—and thus that Doctor would face civil and criminal liability for not reporting them. See MCL 722.633. And while appellants contend Doctor's concerns were wrong and impugn her judgment as to them, those criticisms go beyond what reasonable suspicion requires or entails, and do not themselves betray a lack of good faith in Doctor's reporting. See, e.g., *Lee v Detroit Medical Center*, 285 Mich App 51, 62-63; 775 NW2d 326 (2009) (recognizing that the same "reasonable cause to suspect" standard applies to both medical and non-medical reporters, and its satisfaction "does not require the use of medical judgment" or pre-reporting investigation into the ultimate validity of the suspicion); *Warner*, 211 Mich App at 559 ("[I]mmunity extends to reports of 'suspected' child abuse regardless of the outcome of a subsequent investigation."); see also *People v Cavaiani*, 172 Mich App 706, 713; 432 NW2d 409 (1988) ("The Legislature intentionally used 'reasonable cause to suspect' as the threshhold for requiring a report in the belief that public policy is better served by investigating possibly unfounded reports of child abuse than by failing to investigate where abuse may prove to have occurred.").

Appellants have not shown, through their allegations or otherwise, a viable basis to conclude that Doctor lacked even a reasonable suspicion for her concerns of abuse under the circumstances presented by this case, such that the presumption of her good faith in reporting those concerns would be overcome and her immunity for doing so would be stripped. Nor do we see a question of fact whose further development could provide that basis. See *Doe*, 511 Mich at 1039. We thus find no cause for reversal on these grounds.

## B. IMMEDIATE REPORTING

Appellants next argue that appellees are not entitled to immunity because Doctor failed to make her report "immediate[ly]," as required by MCL 722.623(1)(a). Appellants contend that, to

the extent Doctor could be deemed to have had reasonable cause to suspect that Doe was being abused, that cause arose as of Doe's initial intake at Hospital, which means that Doctor waited nine days to make the report—an interval that was, according to appellants, plainly not "immediate."  And absent compliance with that timing requirement, appellants claim, immunity under the CPL cannot attach.

As appellants acknowledge, the CPL's immunity provision, MCL 722.625, does not itself contain any such timing requirement.  Instead, appellants focus on that provision's statement that its "immunity from civil or criminal liability extends only to acts done according to this act."  Per appellants, a report cannot be made "according to" the CPL if it is not made in compliance with the other requirements set forth in the CPL, including MCL 722.623(1)(a)'s timing requirement.  Appellants base this argument on *Lavey v Mills*, 248 Mich App 244; 639 NW2d 261 (2001).  Appellants, however, overread that decision.

The defendants in *Lavey* were a teacher's aide, a school principal, a Michigan State Police trooper, and a CPS worker.  248 Mich App at 246.  The defendants acted in concert to report and investigate suspected sexual abuse of a disabled minor.  *Id.*  In the course of doing so, the trooper directed the school-staff defendants to transport the minor to a doctor's office for a gynecological examination, assuring them that the school had legal authority to do so.  *Id*. at 247.  The trooper, however, did not obtain a court order or investigate what legal procedures should be followed in connection with the examination.  *Id.*  The CPS worker, for his part, signed the consent form for the examination purporting to be the child's legal guardian, later admitting that he did so despite knowing that he lacked authority to obtain an examination absent parental consent or a court order.  *Id.*  At no point prior to the examination did defendants obtain a court order, or inform or secure the consent of the minor's parents.  *Id*. at 247-248.  No evidence of sexual abuse was ever discovered.  *Id.* at 248.

Relevant here, the trial court in *Lavey* concluded that all defendants were entitled to immunity under the CPL.  This Court affirmed that determination as to the school-staff defendants, but reversed as to the trooper and the CPS worker.  *Id.* at 249.  This Court explained that the school-staff defendants had acted in good faith in reporting the suspected abuse and had thereafter "simply cooperated with the investigation," also acting in good faith in transporting the minor to the doctor's office at the trooper's direction and without the parents' consent.  *Id*. at 253-254.  As to the trooper and the CPS worker, however, this Court explained that the CPL expressly required them to secure a court order for "a medical evaluation of a child" unless "the child's health is seriously endangered and a court order cannot be obtained."  *Id*. at 256, quoting MCL 722.626(3).  It was "clear" that the trooper and CPS worker "violated [MCL 722.626(3)] when they arranged for [the minor's] gynecological examination without a court order," as they undisputedly did not seek a court order and they produced no evidence that an order could not have been obtained or that the minor's health was seriously endangered.  *Id*.  Because these defendants "committed a

clear violation of" the CPL, they "were not acting 'pursuant to' the [CPL]" and so were not entitled to immunity. *Id.* at 256-257, quoting MCL 722.625.[2]

Unlike appellants, we do not read *Lavey* so broadly as to strip mandatory reporters of immunity whenever they report in a manner that is not "immediate." The trooper and CPS worker in *Lavey* (unlike the school-staff defendants in that case) engaged in an act that the CPL clearly and expressly prohibited; under the statute, the gynecological examination of the minor could not occur unless certain requirements were met, and they undisputedly (and even knowingly) were not. Here, by contrast, Doctor engaged in an act that was required by the CPL—reporting suspected abuse—and while the CPL may also require that such reporting be "immediate," it does not purport to prohibit non-immediate reporting. To the contrary, it leaves mandatory reporters potentially liable, civilly and criminally, for failing to report—immediately or otherwise. See MCL 722.633. And indeed, stripping immunity from mandatory reporters for nothing more than failing to report immediately would run contrary to the purpose of that immunity and the CPL in general, which is "to *encourage* reporting of suspected child abuse." *Warner*, 211 Mich App at 559 (emphasis added).[3] The same cannot be said for the "clear violation" of the CPL at issue in *Lavey*, and we do not read the absence of immunity there to support appellants' position here. Nor do we find any other legal support, in the CPL or otherwise, for that position.[4] Accordingly, even

---

[2] At the time *Lavey* was decided, MCL 722.625 provided that its "immunity from civil or criminal liability extends only to acts done *pursuant to* this act," rather than "*according to* this act." (Emphasis added.)

[3] See also *Groat ex rel Moorehead v Coulston*, unpublished per curiam opinion of the Court of Appeals, issued October 10, 1997 (Docket No. 196206), p 2 (rejecting the plaintiff's argument that the CPL's immunity is lost if a report is not made consistently with the statute's timing requirements because that would unduly "frustrate[] the purpose behind the" CPL). While *Groat* is not binding and pre-dates *Lavey*, we find its cited rationale instructive and undisturbed by that decision. See *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 370; 986 NW2d 451 (2022) ("Unpublished opinions are not binding, although they may be persuasive.").

[4] In a related argument, appellants point to caselaw recognizing that, under the CPL, a mandatory reporter is not to delay reporting a reasonable suspicion of abuse in order to investigate its validity, but instead must report that suspicion immediately. See, e.g., *Lee*, 285 Mich App at 63 (explaining that, under the CPL, "doctors are left with little, if any, discretion in reporting" and "if there is any 'reasonable cause to suspect' abuse or neglect, the doctor must report it immediately and let CPS investigate the case to determine the validity of the information provided") (quoting MCL 722.623(1)(a)). Appellants contend that Doctor violated this principle because, to the extent Doctor had reasonable suspicion, it would have arisen at the time of Doe's initial intake meeting, but Doctor nonetheless delayed reporting until 9 days later, purportedly to confirm her suspicion. Appellees dispute the premise of this argument (and fairly so, as noted below). But even accepting the premise as true, it fails for the same core reasons as above; to the extent that Doctor's report was not immediate, whether due to a pre-report investigation unwarranted under the CPL or for some other reason, that does not in itself render MCL 722.625's immunity inapplicable. We do not read *Lee*, *Lavey*, or any other relevant caselaw to indicate otherwise.

assuming Doctor did not report "immediate[ly]" as required by MCL 722.623(1)(a),[5] that did not render immunity under MCL 722.625 inapplicable in this case. We thus see no cause for reversal on these grounds, either.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman

---

[5] For purposes of disposing of this appeal, we need not resolve whether Doctor's report was not, in fact, "immediate" under MCL 722.623(1)(a). We note, however, that the CPL itself provides no definition of that term. And, while appellants maintain that there was a 9-day interval between when Doctor's claimed reasonable suspicion arose and when she made her report, appellees convincingly dispute that point. While Doctor may have first started having concerns about Doe's course of treatment at her initial intake meeting, the allegations and record indicate that the catalyzing event for Doctor's reasonable suspicion of abuse based on those concerns was the contentious phone call with Mother a week later. For the reasons discussed above, however, we need not determine when exactly Doctor's reasonable suspicion arose and whether the report was made "immediate[ly]" after it for purposes of the CPL as, regardless, the CPL's immunity provision applies to the conduct at issue in this case. Relatedly, we disagree with appellants that any further discovery on the matter is needed before that entitlement to immunity can be properly determined. See *Doe*, 511 Mich at 1039.