**ANONYMOUS HOSPITAL,**
**Appellant–Defendant,**

v.

**A.K., et al., Appellees–Plaintiffs.**

No. 45A03–0901–CV–2.

Court of Appeals of Indiana.

Jan. 26, 2010.

Sharon L. Stanzione, Merrillville, IN, Attorney for Appellant.

Michael D. Babcock, Ronald F. Layer, Dyer, IN, Attorneys for Appellees.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

This is an interlocutory appeal brought by the Appellant–Defendant Anonymous

Hospital (Hospital). Hospital appeals the trial court's denial of its petition for preliminary determination of law and motion for summary judgment.

We reverse.

## ISSUE

Hospital presents one issue for our review which we restate as: whether the trial court erred by denying Hospital's petition for preliminary determination of law and motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

In the late evening hours of April 30, 2004, parents A.K. and M.C. (collectively "Parents") took their 11–month–old daughter, S.K., to Hospital due to an unexplained fever. In rendering care to S.K., the treating physician at Hospital ordered a urine analysis. Lab analysis of this first sample showed sperm present in S.K.'s urine. A second urine sample was ordered and collected by way of a catheter. This second sample was also found to contain sperm. Based upon the lab results, Hospital personnel contacted the local child protective services and law enforcement to advise them of the situation.

S.K. was admitted to the hospital in the early morning hours of May 1, 2004. During S.K.'s hospitalization, a third urine sample was obtained and analyzed. Analysis of this sample did not indicate the presence of any sperm in S.K.'s urine. On May 3, 2004, child protective services came to Hospital to investigate the situation and, later that day, gave permission to discharge S.K. from Hospital. During the investigation process, S.K.'s twelve-year-old step-brother was questioned and counseled.

Based upon this incident, Parents filed a complaint against Hospital alleging that Hospital committed medical malpractice. Hospital filed a petition for preliminary determination of law and motion for summary judgment in the trial court while the complaint was pending with the medical review panel.[1] The trial court held a hearing and subsequently entered an order denying Hospital's petition and motion. It is from this denial that Hospital now appeals.

## DISCUSSION AND DECISION

Hospital contends that the trial court erred by denying its petition for preliminary determination and motion for summary judgment. On appeal from a denial of summary judgment, our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Winchell v. Guy*, 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006); *see also* Ind. Trial Rule 56(C). Further, appellate review of a summary judgment motion is limited to those materials designated to the trial court, and all facts and reasonable inferences drawn therefrom are construed in favor of the non-movant. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind.Ct.App. 2006), *trans. denied*, 860 N.E.2d 590.

Hospital argues that it is immune from liability for making a report of possible child abuse or neglect as it is required by law to do so. Indiana law requires that an individual who has reason to believe that a child is a victim of child abuse or neglect shall immediately make a report to either the department of child services or the local law enforcement agency. Ind.Code §§ 31–33–5–1, –2 and –4. The failure to

---

**1.** Ind.Code § 34–18–11–1 provides that trial courts can make preliminary determinations on affirmative defenses or issues of law or fact while the proposed complaint is pending with the medical review panel.

make a report constitutes a criminal offense classified as a B misdemeanor. Ind. Code § 31–33–22–1. A person who makes such a report is immune from both civil and criminal liability because of doing so; however, immunity will not attach if the person making the report has acted maliciously or in bad faith. Ind.Code §§ 31–33–6–1 and –2. Yet, the person making the report is presumed to have acted in good faith. Ind.Code § 31–33–6–3.

Parents allege that Hospital committed malpractice by negligently testing the urine samples of S.K. and reporting those test results to authorities, causing the family to be separated during the investigation into the matter by authorities. They maintain that the presumption of good faith on the part of Hospital has been rebutted so as to destroy Hospital's statutory immunity. More particularly, Parents claim that Hospital reported the situation to authorities before a managing care doctor became involved with the case; that there is a question as to whether the second urine sample was collected and/or tested prior to authorities being involved in the case; that a "wet specimen" was not obtained until after the authorities were notified; and that A.K.'s request to independently test the specimens was denied.

■ In the first three of the four examples of purported bad faith, Parents essentially allege that Hospital acted in bad faith by reporting initial positive test results prior to confirming the accuracy of the results. Indeed, Parents aver that "[t]o report an allegation of child abuse or molestation without being sure would rebut the presumption of good faith and strip the Hospital of the immunity." Appellees' Brief at 7.

The fact that Hospital reported possible child abuse without delay does not support an inference of bad faith. Instead, it suggests the opposite. The immediate reporting by Hospital suggests that Hospital had a good faith belief that S.K. was in immediate danger. Further, Parents point to no requirement, and we know of none, that a managing care doctor must be involved in a decision to report suspected child abuse or neglect to the authorities. The statute makes clear that time is of the essence in such a situation by requiring that abuse or neglect "shall *immediately*" be reported. *See* Ind.Code § 31–33–5–4 (emphasis supplied).

In addition, two different analyses of S.K.'s urine showed sperm. Whether the second analysis or the wet specimen were done before or after the report was made to the authorities is of no moment. First, there is no requirement that a reporter wait for confirmation from a second analysis or test. Rather, as we noted above, the statute mandates that suspected abuse or neglect be reported immediately. *See* Ind. Code § 31–33–5–4. Moreover, even if the second analysis or the wet specimen were completed after the authorities were called, as Parents have suggested happened in this case, the end result is the same: the second analysis also showed evidence of sperm in S.K.'s urine, which required notification of the authorities by Hospital. Furthermore, although in their brief Parents state that the wet specimen tested negative for sperm, the designated materials note that the wet specimen was in too much saline, making it an inappropriate specimen for a wet mount examination. *See* Hospital's Designation of Evidence, Exhibit 5, Appellant's Appendix at 167–68. Nevertheless, two prior analyses of S.K.'s urine showed the presence of sperm, either one of which would trigger the duty to report contained in Ind.Code §§ 31–33–5–1 to –4.

■ Finally, Parents assert that Hospital's bad faith is further evidenced by its refusal to provide the samples to A.K. for

testing at an independent laboratory. The designated materials reveal that A.K. did not request the samples until June 2004 after the police department indicated that it was not pursuing the case any further. Thus, A.K.'s request was made one month *after* S.K.'s visit to Hospital when sperm was detected in her urine. Therefore, Hospital's response to A.K.'s request to obtain the samples has no bearing on its good faith in reporting the suspected abuse or neglect at the time of the incident one month prior in May 2004. Consequently, we conclude there is no evidence to rebut the presumption of good faith afforded to Hospital for its report to authorities in May 2004 concerning S.K.

■ Having determined that there is no evidence of bad faith, we turn now to whether Hospital's immunity should be limited to the report of suspected abuse and should not extend to the underlying diagnosis. Parents claim that Hospital's testing of S.K.'s urine was negligent and that the results were erroneous. Consequently, Parents assert that Hospital's statutory immunity for reporting the suspected abuse to authorities does not extend to its negligent misdiagnosis.

Having found no case law on this subject from the courts of this State, we find case law from other states to be persuasive. For example, in *D.L.C. and J.L.C. v. Walsh*, 908 S.W.2d 791 (Mo.Ct.App.1995), a father and his minor daughter brought a medical malpractice action against physicians and a hospital, alleging that the physicians negligently misdiagnosed the existence of sexual abuse in the daughter. The diagnosis resulted in a report of suspected abuse being made to authorities, followed by an investigation. Similar to Indiana's statutes, the relevant state statutes mandated physicians to report cases of suspected child abuse to the proper authorities and provided them immunity

for doing so, if done without malice. The Missouri Court of Appeals determined that the state's statutory immunity applied not only to the report of suspected child abuse but also to the underlying diagnosis itself. The court's determination was based upon the statute's language providing immunity for anyone "participating" in the "making" of a report. *Id.* at 798. The court explained that because the making of the report included an examination of the child, the two are "inextricably linked." *Id.* Therefore, the court concluded that the plain language of the statute provided immunity not only for the reporting of suspected child abuse but also for the making or development of such report.

Similarly, the Indiana statute provides, in part, immunity for any person who "makes or causes to be made" a report of suspected child abuse. Ind.Code § 31–33–6–1. In examining this statute, we are mindful of our rules of statutory construction. The words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.* Additionally, the language employed in a statute is deemed to have been used intentionally. *Id.*

Upon review of the statute's plain language, it is clear that the statute provides immunity for any individual making a report, as well as for any individual participating in any actions that cause the report to be made. The phrase "causes to be made" in the statute necessarily includes the examination, testing and diagnosis of the child by health care providers. The results of the initial examination and testing are what produce the diagnosis that then causes the report of suspected abuse to be made to the authorities. Thus, the examination, testing and diagnosis of the

child are inextricably linked with the making of the report because without the examination, testing and diagnosis, there would be no report. Here, the examination of S.K. and the lab analysis of S.K.'s urine by Hospital's staff caused the report to be made to the authorities.

In addition, our state legislature has expressed the following purposes for the child abuse reporting statute: to encourage effective reporting of suspected child abuse or neglect; to provide prompt investigation of reports of child abuse or neglect; and to provide protection for an abused or neglected child from further abuse or neglect. *See* Ind.Code § 31–33–1–1. In order to achieve these goals, as we have already discussed, the legislature requires individuals to immediately report suspected abuse to the authorities and has provided immunity for reporters of child abuse, absent bad faith. *See* Ind.Code §§ 31–33–5–1, –2 and –4, and §§ 31–33–6–1, –2 and –3. The legislature's stated goals are better met when individuals attempting to comply with the reporting statute can do so without the fear of civil liability. To decide otherwise, would have a chilling effect on the reporting of child abuse. Health care providers would be placed in a "Catch 22"—report the suspected abuse and be subject to civil liability, or fail to report the suspected abuse and be subject to criminal liability. This illogical result cannot be what our legislature intended. *See Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Cooperatives, Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998) (stating that legislature is presumed to have intended its language be applied in a logical manner consistent with underlying goals and policy of statute).

Further, in *Hazlett v. Evans,* 943 F.Supp. 785 (E.D.Ky.1996), we find a situation similar to the one at bar. The parents of a one-month-old child took the child to the emergency room when the child developed a fever and symptoms consistent with seizures. The treating physician ordered a CT scan of the child's head, the results of which showed a hemorrhage. Having concluded that the child's brain injury possibly could be a result of Shaken Baby Syndrome, the physician reported the situation to social services. Upon investigation, social services removed the child from her parents, and her father was charged with child abuse, but the charges were later dropped. The parents sued the hospital alleging that the treating physician wrongfully misdiagnosed the child with Shaken Baby Syndrome and that this misdiagnosis caused the child to be removed from their home and deprived of their love and care. The physician moved the court to dismiss the complaint based on immunity.

Similar to the Indiana statutes, the state statutes of Kentucky and West Virginia, which were both involved in the Hazlett case, require a doctor to report any possible child abuse when he or she has reasonable cause to believe or suspect such child abuse has occurred. A doctor is provided with immunity when he or she reports abuse in good faith. If a doctor fails to report suspected abuse, he or she is subject to a misdemeanor charge. *See Hazlett,* 943 F.Supp. at 787. In determining whether the physician could be held liable for misdiagnosis of the child which resulted in the report of suspected child abuse, the district court noted that other courts across the country have determined that "the intent of the immunity statutes are to ensure that health care professional and others who work with children will not be stifled and unwilling to report such abuse for fear of reprisal from upset and sometimes wrongly accused parents." *Hazlett,* 943 F.Supp. at 787–88. The court reasoned that unless the parents could show

bad faith on the part of the doctor when he reported the suspected child abuse to the authorities, he should be afforded the immunity granted by statute for his reporting to the authorities as well as his underlying diagnosis.

Having found no evidence of bad faith in the present case, we determine that the immunity provided to Hospital pursuant to Ind.Code § 31–33–6–1 includes immunity not only for the report to authorities of the suspected abuse of S.K., but also for the underlying examination, tests, and diagnosis that triggered such report. In so holding, we join the ranks of several courts across the country that have determined that statutory immunity applies not only to the report of suspected child abuse, but also to the underlying diagnosis. *See e.g., Watterson v. Page,* 987 F.2d 1 (1st Cir. 1993); *Michaels v. Gordon,* 211 Ga.App. 470, 439 S.E.2d 722 (1993); *May v. Southeast Wyoming Mental Health Ctr.,* 866 P.2d 732 (Wyo.1993); *Maples v. Siddiqui,* 450 N.W.2d 529 (Iowa 1990); *Criswell v. Brentwood Hospital,* 49 Ohio App.3d 163, 551 N.E.2d 1315 (1989); and *Awkerman v. Tri–County Orthopedic Group, P.C.,* 143 Mich.App. 722, 373 N.W.2d 204 (1985).

Nevertheless, in support of their argument that Hospital's alleged misdiagnosis nullifies its immunity, Parents cite *McCauley v. Lake County Dept. of Child Services,* 2008 WL 5333324 (N.D.Ind.2008). In *McCauley,* the defendant-hospital performed a routine drug screen on the McCauleys' newborn son. The lab report revealed positive results for narcotic drugs, and the hospital notified the department of child services. The department removed the baby and his older sister from the McCauleys' custody. Information was then obtained that showed that the lab results were incorrect. The McCauleys claimed that (1) the hospital was negligent in reporting unconfirmed

positive test results to the department of child services and (2) the hospital failed to take corrective action once it discovered the initial test results were incorrect. The hospital moved for summary judgment, which the court granted in part and denied in part.

The United States District Court for the Northern District of Indiana granted the hospital's motion for summary judgment with regard to the McCauleys' claim that the hospital negligently reported the initial positive test results before those results were confirmed. Just as we have determined in the present case, the district court concluded in *McCauley* that the fact that the hospital reported possible child abuse right away did not support an inference of bad faith; rather, it suggested that the hospital had a good faith belief that the baby was in immediate danger. There being no evidence to rebut the presumption of the good faith of the hospital, the court granted summary judgment on this issue.

Additionally, the district court denied the hospital's motion for summary judgment with regard to extending the hospital's immunity beyond application to the claim that it negligently made a report of suspected abuse to the authorities to include subsequent acts which would not have occurred but for the report. Essentially, the hospital was seeking to extend the statutory immunity provided for in Ind.Code § 31–33–6–1 to a situation where an individual reports suspected abuse and later learns that the basis for the report is invalid but does nothing. Specifically, the hospital's lab tests revealed positive results for narcotic drugs in the blood of the McCauleys' newborn son. Subsequently, reports prepared by outside labs revealed that the hospital's initial test results were wrong, but the hospital did nothing to correct the misdiagnosis. The district

court denied summary judgment on this issue stating that rather than promoting the legislative aims of the reporting statute, extending immunity to persons who make erroneous reports and fail to correct them would frustrate the stated policy goals.

The present case is easily distinguished from *McCauley*. Here, Hospital maintains that its lab results showing the presence of sperm in S.K.'s urine were accurate. Moreover, nothing in the designated evidence contradicts this claim. The designated evidence shows that an investigation by the System Laboratory Operations Director of Hospital's lab revealed that the machine being used to test the urine was properly maintained and decontaminated between specimens and that there was no evidence of contamination of S.K.'s specimens.

Further, Parents designated the lab report from the independent laboratory. The independent lab received eight specimens. Of those eight, only two specimens were analyzed by the lab, neither of which was found to contain sperm. One of the two specimens analyzed by the independent lab was also found by Hospital's lab to contain no sperm. The independent lab's analysis of the second specimen provides no information because it is indeterminate as to which Hospital specimen, and results, the specimen correlates.

Parents also designated the police report concerning this incident, which included a summary by the detective on the case. During the course of the investigation of this matter, the detective spoke with A.K.'s twelve-year-old son. A.K.'s son admitted to the detective that he had masturbated, had not cleaned himself, and had then held S.K. while she was unclothed. The detective further noted his conversation with Hospital's pathologist who indicated that there were no signs of penetration and that the semen was possibly caused by contamination consistent with the twelve-year-old's story. Included in the police report is the report by Dr. Gallagher, Hospital's pathologist. She concluded that the findings in this case were "most compatible with [ ] (external) contamination by semen." Parents' Designation of Evidence, Exhibit H, Supplemental Appellant's Appendix at 189–90. Thus, the uncontradicted designated evidence here shows that, unlike in *McCauley*, Hospital's lab results were accurate.

### CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that Hospital's petition for preliminary determination of law and motion for summary judgment should be granted. Hospital is afforded immunity for the good faith reporting of the suspected child abuse, as required by statute, and we conclude that such immunity extends to the underlying diagnosis for the reasons discussed in this opinion.

Accordingly, we reverse the trial court's denial of Hospital's petition for preliminary determination of law and motion for summary judgment.

BAKER, C.J., and CRONE, J., concur.