

FILED

Oct 05 2023, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kelley J. Johnson
Law Office of Kelley J. Johnson
Indianapolis, Indiana

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEES
ANONYMOUS HOSPITAL,
ANONYMOUS M.D., AND
ANONYMOUS EMERGENCY
PHYSICIANS, INC.

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEY FOR APPELLEE
ANONYMOUS MEDICAL
FOUNDATION, INC.

Michael G. Getty
Hunt Suedhoff Kearney LLP
South Bend, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Jasmine McNeil, individually
and on behalf of Arth'dara
McNeil, Chyna Brown, and
Imoni Brown, Minors,

*Appellants-Plaintiffs,*

v.

Anonymous Hospital,
Anonymous M.D., Anonymous
Emergency Physicians, Inc.,
Anonymous Medical

October 5, 2023

Court of Appeals Case No.
22A-CC-2209

Appeal from the
St. Joseph Superior Court

The Honorable
Mary Beth Bonaventura,
Judge Pro Tempore

Trial Court Cause No.
71D07-2107-CC-2058

Foundation, Inc., and Amy L.
Beard, in her capacity as Acting
Commissioner of the
Department of Insurance,

*Appellees-Defendants.*

**Opinion by Senior Judge Najam**
Judges Bailey and Crone concur.

**Najam, Senior Judge.**

## Statement of the Case

Jasmine McNeil, individually and on behalf of her three children, submitted a proposed complaint to the Indiana Department of Insurance against Anonymous Hospital and other qualified health care providers (the "Hospital"). Appellants' Conf. App. Vol. II, pp. 52-56.[1] McNeil accuses the Hospital of medical malpractice based upon incorrect laboratory test results which led to a misdiagnosis and which caused an erroneous report of child abuse to be created. In her proposed complaint McNeil claims that the

---

[1] McNeil notes that all parties named in the trial court are considered parties on appeal, *see* Ind. Appellate Rule 17(A), but states that "this appeal is taken against one party – the Hospital" and that she "is not taking issue with the trial court's grant of summary judgment for the attending physician, the employer of the attending physician, or anyone else other than the Hospital." Appellants' Br. pp. 4, n.1; 10, n.8. Citations to the Appellees' Brief will refer to the brief submitted by Anonymous Hospital.

Hospital's alleged malpractice was the proximate cause of the emotional distress and other damages she and her children have suffered as a result of an unsubstantiated child abuse investigation caused by the Hospital. *Id.* The gravamen of the complaint is that the Hospital laboratory produced negligent, inconclusive, and incorrect test results. McNeil requested that a Medical Review Panel be convened to conduct a thorough inquiry.

The Hospital sought an initial determination of law and asked the trial court to enter summary judgment against McNeil as to all claims raised in the proposed complaint. *Id.* at 20-21. The Hospital argued it enjoyed statutory immunity from McNeil's claims under Indiana Code § 31-33-6-1(a) (2018), which generally grants qualified immunity to a person who makes or causes to be made a report of child abuse or neglect (the "reporting statute"). McNeil countered that under Indiana Code § 31-33-6-1(b) (2018), the immunity provided under the reporting statute does not apply to a qualified health care provider defending an action for medical malpractice. Appellants' Br. p. 5.

The trial court granted the Hospital's Motion for Preliminary Determination and Motion for Summary Judgment, and McNeil filed a motion to correct error, which the court summarily denied. McNeil now appeals.

We reverse and remand.

## Question Presented

This appeal presents a question of statutory interpretation. We are asked to determine the meaning, operation, and effect of Indiana Code Section 31-33-6-

1(b) ("subsection (b)"), a provision which our legislature added to the child abuse or neglect reporting statute in 2018. The specific question presented is whether under the reporting statute, as amended by subsection (b), a qualified health care provider who has not acted with gross negligence or willful or wanton misconduct, retains immunity under Indiana Code Section 31-33-6-1(a) from a medical malpractice action for making or causing to be made a report of child abuse or neglect "even if the reported child abuse or neglect is classified by the department [of child services] as unsubstantiated." Indiana Code § 31-33-6-1(a)(1)-(6). And a necessary corollary to this question is whether the holding in *Anonymous Hospital v. A.K.,* 920 N.E.2d 704 (Ind. Ct. App. 2010) survived the 2018 amendment of the statute.

## Standard of Review

[6] The parties agree that for the purpose of this appeal, there are no genuine issues of material fact. As such, we are presented with a question of statutory interpretation, which is a question of law reserved for the court and is reviewed de novo. *Vanderburgh Cnty Election Bd. v. Vanderburgh Cnty Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005). In this case, our review is de novo for the additional reason that this is an appeal from the grant of a summary judgment. *See Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423 (Ind. 2015). And where, as here, evidence accompanies a motion for preliminary determination under Indiana Code Section 34-18-11-1 (1998), the motion is subject to the same standard of appellate review as a summary judgment motion. *Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 294 (Ind. Ct. App.

2013). Finally, when appellate courts review questions of law under a de novo standard, we owe no deference to a trial court's legal conclusions. *B P Amoco Corp. v. Szymanski*, 808 N.E.2d 683, 687 (Ind. Ct. App. 2004), *trans. denied*.

## Discussion and Decision

[7] "The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used." *T.W. Thom Const., Inc. v. City of Jeffersonville*, 721 N.E.2d 319, 324 (Ind. Ct. App. 1999). "Thus, we are not at liberty to construe a statute that is unambiguous." *Id.* "[W]e must give an unambiguous statute its clear and plain meaning." *McCabe v. Comm'r, Ind. Dep't of Ins.,* 949 N.E.2d 816, 819 (Ind. 2011). "When a statute is unambiguous, it is unnecessary to engage in statutory construction in an effort to determine and give effect to legislative intent." *Id.* And under Indiana Code Section 1-1-4-1(1) (1991), "Words and phrases shall be taken in their plain, or ordinary and usual, sense."

[8] This is our first occasion to consider the child abuse or neglect reporting statute, Indiana Code Section 31-33-6-1, since it was amended in 2018 by the addition of subsection (b). The statute as amended in 2018 reads as follows:

> (a) Except as provided in subsection (b) and section 2 of this chapter, a person, other than a person accused of child abuse or neglect, who:
> (1) makes or causes to be made a report of a child who may be a victim of child abuse or neglect;
> (2) is a health care provider and detains a child for purposes of causing photographs, x-rays, or a medical examination to be

made under IC 31-33-10;

(3) makes any other report of a child who may be a victim of child abuse or neglect;

(4) participates in or assists with an investigation by the department or a law enforcement agency resulting from a report that a child may be a victim of child abuse or neglect, including by transferring photographs, x-rays, or medical examination records completed under subdivision (2);

(5) is a health care provider and provides professional intervention resulting from a report that a child may be a victim of child abuse or neglect, including:

(A) providing care or treatment to the child;

(B) participating in a case review concerning the child;

(C) providing advice or consultation concerning the child;

(D) disclosing medical records and other health information concerning the child, in accordance with federal or state law governing the disclosure of medical records;

(E) providing information to a child fatality review team; or

(F) recommending judicial action concerning a child; or

(6) participates, including testifying as a witness, in any judicial proceeding or other proceeding:

(A) resulting from a report that a child may be a victim of child abuse or neglect; or

(B) relating to the subject matter of the report;

is immune from any civil or criminal liability that might otherwise be imposed because of such actions, even if the reported child abuse or neglect is classified by the department as unsubstantiated.

(b) Subsection (a) does not apply to an action brought against a qualified health care provider for medical malpractice under IC 34-18-8.

[9] McNeil contends that subsection (b) is unambiguous. She notes that it is only when a statute is ambiguous that a court resorts to construction or

interpretation, and that a statute is not ambiguous unless its words and phrases when taken in their plain, or ordinary and usual, sense are susceptible to more than one reasonable interpretation. Appellants' Br. p. 12; *see* Indiana Code Section §1-1-4-1(1); *see also Mi.D. v. State*, 57 N.E.3d 809, 813 (Ind. 2016) ("Under well-established principles of statutory interpretation, a statute is ambiguous when it allows more than one reasonable interpretation."). McNeil argues that "it is difficult to see how anyone can find ambiguity in § 31-33-6-1(b)" or "be misled by the words 'does not apply.'" Appellants' Br. p. 13. Thus, she concludes, "The [reporting] immunity defense simply 'does not apply' to a malpractice lawsuit" and that to find ambiguity in the statute would require that we read words into the statute that are not there. *Id.*

[10] Thus, McNeil contends that the reporting statute, as amended, does not bar a medical malpractice claim where the examination, tests, or diagnosis underlying the report support such a claim. Stated another way, McNeil contends that while Indiana Code § 33-31-6-1(a) grants broad immunity for reporting child abuse or neglect and for acts in furtherance of child abuse investigations, § 33-31-6-1(b) makes clear that this broad immunity does not include acts of medical malpractice. In addition, McNeil contends that an action for malpractice leading to a report seeks civil liability for the malpractice, not liability for an erroneous report and, thus, that, "[T]his appeal does not take issue with the report of suspected child abuse in and of itself." Appellants' Br. p. 10, n. 8.

[11] The Hospital counters that "The legislature's amendment to Ind. Code 3-33-6-1 creates an ambiguity in the statute because it emasculates the legislative intent expressed in the same statute and by this Court." Appellees' Br. p. 5. The Hospital emphasizes that the legislature is presumed to have intended its language to be applied in a logical manner consistent with the underlying goals and policy of the statute. *Id.* at 5-6. And the Hospital contends that McNeil's argument would create the "illogical situation" of first providing broad immunity in one subsection of the statute [subsection (a)], including immunity for a negligent misdiagnosis leading to an unsubstantiated report of abuse or neglect, and then removing that same immunity through another subsection of the statute [subsection (b)]. *Id.* at 6.

[12] The Hospital asserts categorically that "The only logical construction of the Indiana reporting statute is to give a healthcare provider immunity from any acts leading to the creation of a report, including a negligent misdiagnosis, unless those acts were grossly negligent or willful and wanton." *Id.* at 18. Stated another way, according to the Hospital, the Indiana immunity statute "provides complete immunity for reporting but does not provide immunity or change the method for claims regarding the doctor's treatment of abuse victims unrelated to the reporting." Appellants' Br. p. 5; Appellants' App. Conf. Vol. III, p. 196 (Hospital's reply in support of motion for summary judgment). This argument rests upon the Hospital's premise that "the addition of subsection (b) creates an ambiguity in the statute." Appellees' Br. p. 11.

## The Plain Meaning Rule

[13] "If the text of the statute is clear and unambiguous, it is not subject to judicial interpretation and must be held to mean what it plainly says." *In re Estate of Bricker*, 212 N.E.3d 712, 714 (Ind. Ct. App. 2023). And "we may not add new words to a statute which are not the expressed intent of the legislature." *Ramey v. Ping*, 190 N.E.3d 392, 403 (Ind. Ct. App. 2022), *trans. denied*. "However, when the language is reasonably susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent." *Avco Fin. Servs. of Indianapolis, Inc. v. Metro Holding Co.*, 563 N.E.2d 1323, 1328 (Ind. Ct. App. 1990). "Statutory provisions cannot be read standing alone; instead, they must be construed in light of the entire act of which they are a part." *Deaton v. City of Greenwood*, 582 N.E.2d 882, 885 (Ind. Ct. App. 1991). "When construing a statute, we will presume the legislature intended the language of the statute to be applied in a logical manner, consistent with its underlying goals and policy." *Sightes v. Barker*, 684 N.E.2d 224, 227 (Ind. Ct. App. 1997), *trans. denied*.

[14] Thus, the parties dispute whether the plain meaning rule controls or whether the statute, as amended by the addition of subsection (b), is ambiguous and requires interpretation or construction. Resolution of that question is essential, but not the only consideration in determining whether a qualified health care provider is immune from a medical malpractice claim under subsection (a) where negligence is alleged to have occurred in the examination, testing, or diagnosis leading to the creation of a report of child abuse or neglect.

### *Subsections (a) and (b) Can be Harmonized*

[15]     Both subsection (a) and subsection (b) concern the scope of immunity under the statute. Subsection (a) grants broad immunity in child abuse or neglect reporting, while subsection (b) declares an exception to that grant of immunity. These subsections complement one another. One subsection is simply an exception to the other subsection. Our Supreme Court has said that, "When two statutes on the same subject must be construed together, a court should attempt to give effect to both and *must* attempt to harmonize any inconsistencies or conflicts before applying any other rule of statutory construction." *Moryl v. Ransone*, 4 N.E.3d 1133, 1137 (Ind. 2014). "[P]aramount consideration must be given to the basic principle that two statutes that apply to the same subject matter must be construed harmoniously, if possible." *McCabe*, 949 N.E.2d at 820. "This rule takes precedence over other rules of statutory construction." *Id.* And this rule also applies where, as here, there are two subsections within the same statute covering the same subject. *State v. Universal Outdoor, Inc.*, 880 N.E.2d 1188, 1189-91 (Ind. 2008) (harmonizing subsections (a) and (c) of Indiana Code section 32-24-1-11 regarding timing of exceptions to appraisers' report in eminent domain proceedings).

[16]     We conclude that subsection (a) and subsection (b) can easily be harmonized and reconciled. Clearly the legislature did not intend for the subsection (b) exception to swallow the subsection (a) rule as the Hospital alleges when it contends that the subsection (b) amendment "emasculates the legislative intent

expressed in the same statute and by this Court." Appellees' Br. p. 5. Rather, it is apparent that the legislature determined that both reporting immunity under subsection (a) and an action for medical malpractice allowed under subsection (b) are mutually exclusive and can co-exist within the same statute.

[17] As our Supreme Court has explained, "If the two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect." *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009) (internal quotations omitted). "Statutes relating to the same general subject matter are in pari materia [on the same subject] and should be construed together so as to produce a harmonious statutory scheme." *Id.* (internal quotations omitted). We conclude that subsection (a) and subsection (b) are not irreconcilable and can be harmonized.

[18] Subsection (b) declares that "Subsection (a) does not apply to an action brought against a qualified health care provider for medical malpractice" and, as such, carves out an unqualified exception to the immunity provisions of subsection (a). In its operation and effect, subsection (b) simply means that the qualified immunity provided under the reporting statute does not preclude an otherwise cognizable medical malpractice claim arising out of the same facts, evidence, and circumstances. Notwithstanding the qualified immunity provided under the reporting statute, under subsection (b) both a qualified healthcare provider's contribution to a report of child abuse or neglect and the care and treatment of an alleged child victim unrelated to the reporting are subject to the applicable standard of medical care.

[19] Under subsection (a) of the reporting statute a person who makes or causes to be made a report of suspected child abuse or neglect is immune from civil or criminal liability, provided that the person has not acted with gross negligence or willful or wanton misconduct. *See* Ind. Code §31-33-6-2 (2018). But under subsection (b), on a proper set of facts, a qualified health care provider who makes such a report or causes such a report to be made can be liable for medical negligence.

[20] That is the plain meaning of subsection (b). Thus, we hold that the qualified immunity provided under subsection (a) does not preclude a cause of action for medical malpractice as provided under subsection (b) arising from the same facts. In other words, where medical negligence causes or contributes to an otherwise lawful report of suspected child abuse or neglect, the reporting statute does not preclude a medical malpractice claim arising from the same facts, evidence, and circumstances leading to the report. Subsection (a) and subsection (b) can be harmonized and, thus, the reporting statute and the Medical Malpractice Act are mutually exclusive. "Recognizing that a valid interpretation exists so as to reconcile and harmonize both provisions in the present case, we will – and must – give effect to both provisions." *Rodriguez v. State*, 129 N.E.3d 789, 796 (Ind. 2019).

**Anonymous Hospital v. A.K.**

[21] The next question is whether the subsection (b) amendment to the reporting statute abrogates our opinion and compels us to depart from our holding in *Anonymous Hospital v. A.K.*, a case of first impression that was well-reasoned and

correctly decided before the 2018 amendments to the child abuse or neglect reporting statute. In the instant case we must determine whether the 2018 subsection (b) amendment affects our holding in *Anonymous Hospital* that the immunity provided "pursuant to Ind. Code §31-33-6-1 includes immunity not only for the report to authorities of the suspected abuse . . . but also for the underlying examination, tests, and diagnosis that triggered such report." 920 N.E.2d at 710.

[22] In *Anonymous Hospital v. A.K,* parents brought a medical malpractice action alleging that the hospital had failed to confirm the accuracy of laboratory test results, which caused the hospital to make an erroneous report of possible child abuse or neglect and nullified the hospital's statutory immunity. In interpreting the language then contained in subsection (a), we rejected the medical malpractice claim. We reasoned that, "the examination, testing and diagnosis of the child are inextricably linked with the making of the report because without the examination, testing and diagnosis, there would be no report." *Id.* at 708-09. And we held that under subsection (a), the hospital was afforded immunity from a medical malpractice action "for the good faith reporting of suspected child abuse, as required by statute, and . . . that such immunity extends to the underlying diagnosis. . . ." *Id.* at 711.

[23] The Hospital now contends our opinion in that case is controlling and "should not be overruled." Appellees' Br. p. 6. In *Anonymous Hospital v. A.K.,* we addressed the essential elements of a child abuse report as follows:

Upon review of the statute's plain language, it is clear that the statute provides immunity for any individual making a report, as well as for any individual participating in any actions that cause the report to be made. The phrase "causes to be made" in the statute necessarily includes the examination, testing and diagnosis of the child by health care providers. The results of the initial examination and testing are what produce the diagnosis that then causes the report of suspected abuse to be made to the authorities. *Thus, the examination, testing and diagnosis of the child are inextricably linked with the making of the report because without the examination, testing and diagnosis, there would be no report.*

920 N.E.2d 708-09 (emphasis added).

[24]    And we held that:

the immunity provided to Hospital pursuant to Ind. Code § 31-33-6-1 includes immunity not only for the report to authorities of the suspected abuse of [the child] *but also for the underlying examination, tests, and diagnosis* that triggered such report. In so holding, we join the ranks of several courts across the country that have determined that statutory immunity applies not only to the report of suspected child abuse, but also to the underlying diagnosis.

*Id.* at 710 (emphasis added).

[25]    In sum, we held that the precursors, which lead to the creation of a report, are not severable from the report itself and that both enjoy statutory reporting immunity.

[26]    *Anonymous Hospital* was decided in 2010, and our legislature added subsection (b) to the reporting statute in 2018. For that eight-year period, immunity under

the reporting statute included immunity "not only for the report to authorities of suspected abuse . . . but also for the underlying examination, tests, and diagnosis" which predicated the report and which we concluded "are inextricably linked" to the report and without which "there would be no report." *Id.* at 708, 710. "The legislature is presumed to have had in mind the history of the statute and the decisions of the courts upon the subject matter of the legislation being construed." *Sightes*, 684 N.E.2d at 227; *also see*, *Holmes v. Jones*, 719 N.E.2d 843, 848 (Ind. Ct. App. 1999); *Ind. State Bd. of Health v. Journal Gazette Co.*, 608 N.E.2d 989, 993 (Ind. Ct. App. 1993). This rule was followed by our Supreme Court as early as 1937 in *Stith Petroleum Co. v. Dep't. of Audit & Control of Indiana*, 211 Ind. 400, 5 N.E.2d 517 (1937), in which the plaintiff challenged the State's regulation of petroleum products. In that case, our Supreme Court said that, "[a]t the time of the enactment of [the challenged legislation], the Legislature is presumed to have had before it and to have had in mind the history and decisions of the courts upon that subject." *Id.* at 519.

[27] Thus, we must presume that when the legislature enacted subsection (b) it was aware of our opinion in *Anonymous Hospital v. A.K.* that statutory reporting immunity includes not only immunity for making or causing a report to be made but also for the precursors essential to the report – the underlying examination, testing, and diagnosis incorporated in the report and, as we said in *Anonymous Hospital v. A.K.*, without which "there would be no report." 920 N.E.2d at 709. In other words, we must assume that the legislature enacted subsection (b) in contemplation of existing case law.

[28] Indiana does not recognize audio or video coverage of legislative activities as evidence of legislative intent. Ind. Code § 2-5-1.1-15 (2002). Nevertheless, before the trial court the Hospital argued that its interpretation was supported by legislative history, cited video recordings of three legislative hearings, and quoted an author of Senate Bill 431. Appellants' Conf. App. III, pp. 196-198. Anticipating that the Hospital would repeat its legislative history argument on appeal (which it did not), McNeil states preemptively that our legislature has disapproved of such "legislative archeology" and that we are prohibited from considering audio or video coverage of legislative deliberations or statements made by individual legislators as evidence of legislative intent. Appellants' Br. p. 12. We agree.

[29] We also recognize that when voting on Senate Bill 431 some legislators may have believed and even expressed an opinion that the subsection (b) exception to statutory reporting immunity would not disturb the status quo and would apply only to an action for medical malpractice *unrelated to the reporting*. But our Supreme Court has said that, "[i]n interpreting statutes, we do not impute the opinions of one legislator, even a bill's sponsor, to the entire legislature unless those views find statutory expression." *Utility Center, Inc. v. City of Ft. Wayne,* 868 N.E.2d 453, 459 (Ind. 2007) (quoting *A Woman's Choice–East Side Women's Clinic v. Newman*, 671 N.E.2d 104, 110 (Ind. 1996)). In *Utility Center*, the trial court, the Court of Appeals, and our Supreme Court all declined to consider the author's intent as expressed in his affidavit, and the Supreme Court stated it

was unable to conclude that the author's intent [to restrict the eminent domain powers of a municipal utility] was enacted into law. *Id.*

[30]     While resort to legislative history is out of bounds, we can consider statutory history. *See Alldredge v. Good Samaritan Home, Inc.*, 9 N.E. 3d 1257 (Ind. 2014) (reciting the history of legislation concerning the fraudulent concealment doctrine). The statutory history of Senate Bill 431 tracks the bill and its iterations during the 2018 legislative session from its first reading through its enactment. *See* Indiana General Assembly Website, https://iga.in.gov/legislative/2018/bills/senate/431/details. This "paper trail" demonstrates that subsection (b) was not included in Senate Bill 431 when it was introduced and referred to the Senate Civil Law Committee and that the Committee did not vote on the Bill at the first meeting when it was considered. At the next meeting, after a Proposed Amendment (SB 431 #5) including subsection (b) was added to the bill, the Committee approved Senate Bill 431, as amended, and reported the bill favorably with a "Do Pass" recommendation to the Senate, and the bill was ultimately enacted.[2] This statutory history

---

[2] The Digest of the amendment approved by the Civil Law Committee, the Synopsis of the bill as it passed through the Senate and the House of Representatives, and the Digest of the Bill as enacted state that the bill "Provides that the immunity provisions do not apply to actions brought against qualified healthcare providers for medical malpractice." However, the Synopsis and Digests are not part of the bill any more than a West synopsis or headnotes are part of an appellate opinion, and we have not relied upon them in this opinion. We note that the House also adopted and the Senate concurred in a different amendment to Senate Bill 431 (SB 431 #6) which is immaterial to our discussion.

indicates that the subsection (b) amendment to Senate Bill 431 was an overt and deliberate action taken by our legislature.

[31] In a case of statutory construction remarkably similar on its facts, *Dept. of Public Welfare of Allen Cnty v. Potthoff*, 220 Ind. 574, 44 N.E.2d 494, 498 (1942), our Supreme Court invoked "the history of the statute" when it decided whether the legislature had intended for the statute to preserve or cancel existing old age assistance liens. In *Potthoff*, the statutory history disclosed that after a Senate committee had recommended amendments which would have preserved existing liens, the Senate rejected the amendments, and the bill was restored to the form in which it had passed the House and was enacted. *Id.* Our Supreme concluded that, "On the record both houses were charged with knowledge of the effect of the bill" which "indicated quite conclusively that the General Assembly had before it, considered and rejected" the proposed Senate amendments. *Id.* Here, in a mirror image, the amendments were not rejected but approved. The Senate Civil Law Committee recommended amendments to Senate Bill 431, including subsection (b), which were included in the final bill passed by both the Senate and the House. Here, just as in *Potthoff*, "both houses were charged with knowledge of the effect of the bill." *Id*.

[32] But that does not end our inquiry. The question remains whether the legislature intended to abrogate our opinion in *Anonymous Hospital v. A.K.* or intended for our opinion to remain intact notwithstanding the enactment of subsection (b). Our Supreme Court has provided a rule to be applied and guide us under these circumstances:

> First, there is a presumption that when the legislature enacts a statute, it is aware of the common law and does not intend to make a change unless it *expressly or unmistakably implies that the common law no longer controls.*

*Daniels v. Fanduel, Inc.*, 109 N.E.3d 390, 394-95 (Ind. 2018) (emphasis added).

[33] Here, we are asked to address a *different* statute, an amended statute that concerns the very question we decided in *Anonymous Hospital v. A.K.* where we held that the Medical Malpractice Act did not apply to a child abuse report or its precursors (examination, testing, and diagnosis) "inextricably linked" to it. 920 N.E.2d at 709. But the current statute categorically states the opposite, that statutory child abuse or neglect reporting immunity under subsection (a) "does not apply" to an action brought against a qualified health care provider for medical malpractice. Indiana Code § 31-33-6-1(b).

[34] The Hospital asks that we construe subsection (b) beyond its plain meaning to accommodate the Hospital's theory that, as this Court concluded in *Anonymous Hospital v. A.K.*, "the examination, testing and diagnosis of the [putative] child [victim] are inextricably linked with the making of the report because without the examination, testing and diagnosis, there would be no report." 920 N.E.2d at 708-09. The theory advanced by the Hospital is that *Anonymous Hospital v. A.K.* survived the enactment of subsection (b) intact even though subsection (b) contains an unequivocal exception to subsection (a). To accept the Hospital's theory would require that we entirely ignore the 2018 amendments, which added subsection (b). The Hospital's theory finds no expression in the statute.

It is readily apparent that we would not give full force and effect to the plain meaning of subsection (b) if we were to engraft our holding in *Anonymous Hospital v. A.K.* onto the statute, as amended, which we cannot do. We must adhere to the plain logic and text of the statute which declares a specific contrary intent and which "unmistakably implies" that our holding in that case no longer controls. *See Daniels*, 109 N.E.3d at 395. Subsection (b) is an unambiguous, simple, declarative sentence which is not susceptible to more than one reasonable interpretation.

[35] Thus, we hold that Senate Bill 431 abrogated our holding in *Anonymous Hospital v. A.K.* Under subsection (a) of the reporting statute, as amended, where the person creating the report has not acted with gross negligence or willful or wanton misconduct, the act of making or causing a report to be made is immunized. And under subsection (b) of the reporting statute, as amended, the same underlying facts may nevertheless support an action for medical malpractice, which is not immunized, and such an action would be an action for the underlying medical negligence, not an action for creation of the report.

## The Hospital's Contentions

[36] As we have noted, the Hospital contends that the subsection (b) amendment creates an ambiguity in the reporting statute. We have determined, however, that subsection (b) means what it says and requires no interpretation or construction, that there is no ambiguity in the text, grammar, or structure of subsection (b), whether standing alone or in relation to subsection (a), and that

subsection (b) abrogated our holding in *Anonymous Hospital v. A.K.* Nevertheless, we will address the Hospital's arguments that subsection (b) is inconsistent with subsection (a) and that the addition of subsection (b) leads to various "illogical" and ambiguous outcomes.

[37] The Hospital makes at least four distinct contentions: (1) "it would be illogical to construe subsection (b) to emasculate the legislative intent expressed in subsection (a);" (2) subsection (b) is inconsistent with subsection (a) because it applies only to qualified health care providers rather than to all health care providers; (3) courts in other jurisdictions with similar statutes have held that their statutes provide absolute immunity for child abuse and neglect reporting but not for malpractice unrelated to the reporting; and (4) federal law requires absolute immunity for good faith reporting. Appellees' Br. pp. 12-17. We will consider each contention in turn.

### First Contention: It Would be "Illogical" for Subsection (b) to Defeat the Legislative Intent Expressed in Subsection (a)

[38] The Hospital first asserts that "it would be illogical to construe subsection (b) to emasculate the legislative intent expressed in subsection (a)." *Id.* at 12. Specifically, the Hospital continues, it would be illogical to provide broad immunity under subsection (a), "including immunity for a negligent misdiagnosis leading to an unsubstantiated report of child abuse or neglect," and then to "remove that immunity" by the addition of subsection (b) of the same statute. *Id*. The Hospital notes correctly that the legislature is presumed to have intended its language to be applied in a logical manner consistent with

the underlying goals and policy of a statute. *See Sightes*, 684 N.E.2d at 227. Thus, the Hospital reasons this presumption means that subsection (b) must apply *only* to medical malpractice claims unrelated to the reporting.

[39] The Hospital contends that the subsection (b) exception to subsection (a) does not apply to acts leading up to the filing of a report of abuse or neglect, even if the report was caused by a misdiagnosis, and applies only to acts of medical malpractice occurring subsequent to the creation of the report or otherwise unrelated to the reporting. But the amended statute does not make that distinction, and there is nothing in the plain text of subsection (b) to support this theory. As we have already noted, '"[a] statute that is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted."' *IABR, Inc. v. Alcohol and Tobacco Comm'n*, 945 N.E.2d 187, 197 (Ind. Ct. App. 2011) (quoting *Ind. Mun. Power Agency v. Town of Edinburgh*, 769 N.E.2d 222, 226 (Ind. Ct. App. 2002)), *trans. denied*. And, again, we may not engraft new words into the statute at will. *State ex rel. Monchecourt v. Vigo Circuit Court*, 240 Ind. 168, 172, 162 N.E.2d 614, 616 (1959).

[40] We must assume that the legislature means what it says and that the legislature "chose the language it did for a reason." *State v. Prater*, 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), *trans. denied*. Subsection (a) begins with the words "except as provided in subsection (b), and subsection (b) begins with the words, "Subsection (a) does not apply." Ind. Code § 31-33-6-1(a), (b). The relationship between subsection (a) and subsection (b) is unambiguous. These

two subsections are reciprocal. Subsection (a) refers to subsection (b), and subsection (b) refers to subsection (a). And we may not substitute another meaning merely because the statute as written is alleged to yield unintended consequences.

[41] The Hospital continues that if subsection (b) were construed to allow medical malpractice claims in connection with reports generated under subsection (a), it would defeat the legislative purpose of the reporting statute, which is to encourage effective child abuse or neglect reporting and even to err on the side of over reporting. *C.S. v. State*, 8 N.E.3d 668, 683 (Ind. 2014) (the statutory scheme is designed, if anything, to err on the side of *over* reporting suspected child abuse or neglect). Indeed, under subsection (a), which provides statutory reporting immunity, "the General Assembly has protected those who report and are mistaken. . . ." *Id.* However, support for this policy argument cannot be found within the plain text of subsection (b), which carves out an exception for medical malpractice in a simple declarative sentence.

[42] We conclude that subsection (b) is not "illogical" simply because it removes medical malpractice claims from the scope of subsection (a). These two subsections are not incompatible and can co-exist. By its very terms, the immunity under subsection (a) is qualified by two exceptions. Under subsection (b) an action under the Medical Malpractice Act, Indiana Code Section 34-18-8, is permitted where the facts underlying the report, if established, would support a medical malpractice claim. Likewise, under Indiana Code Section 31-33-6-2 ("Section 2"), a civil action for damages is

permitted where the person making the report has acted with gross negligence or willful or wanton misconduct.[3]

[43] Subsection (b) is inconsistent with subsection (a) precisely because an exception is, by definition, inconsistent with the general rule that precedes it. The fact that subsection (b) deviates from the immunity provided under subsection (a) does not render the reporting statute illogical or ambiguous and subject to more than one reasonable interpretation. Subsection (b) means that the child abuse or neglect reporting statute and the Medical Malpractice Act are mutually exclusive and that the reporting statute does not preempt or preclude an otherwise valid medical malpractice claim. Qualified statutory immunity from civil liability attaches to a health care provider's report of possible child abuse or neglect where the reporter has acted without gross negligence or willful or wanton misconduct, but under subsection (b), the immunity provisions for child abuse or neglect reporting under subsection (a) do not preclude an action under the Medical Malpractice Act. We conclude that the subsection (b) exception is not illogical and does not create an ambiguity in the reporting statute.

---

[3] We note that when Senate Bill 431 added subsection (b) to the reporting statute, the Bill also amended Section 2, replacing the words "who has acted maliciously or in bad faith" with the words "who has acted with (1) gross negligence; or (2) willful or wanton misconduct."

### *Second Contention: The Statute as Amended is Illogical Because Subsection (b) Applies Only to Qualified Health Care Providers*

[44]     The Hospital maintains that the reporting statute provides immunity for all Indiana health care providers. Thus, the Hospital contends that subsection (b) is illogical and creates an ambiguity in the reporting statute because it applies only to "qualified health care providers" and refers only to an action for medical malpractice under Indiana Code Chapter 34-18-8 (1998), although not every health care provider is qualified or covered by Indiana Code Section 34-18-3-1 (1998). The Hospital asserts that this "creates a great divide between qualified health care providers and other healthcare providers when dealing with" the reporting statute. Appellants' Conf. App. Vol. III, p. 195. And the Hospital notes correctly that the remedy of an aggrieved patient against a health care provider who is not qualified under the Act is an ordinary civil action. Thus, the Hospital observes that subsection (b) retains reporting immunity for health care providers who are not qualified under the Act but weakens immunity for qualified health care providers and that the legislature could not have intended such an illogical result, reasoning that "those with equal responsibilities should receive the same immunity protection." *Id.*

[45]     The Hospital has identified an apparent disparity in the treatment of qualified health care providers and health care providers under the reporting statute, as amended, but this circumstance provides no support for the Hospital's contention that such disparate treatment creates an ambiguity in the statute. Our determination that subsection (b) does not create an ambiguity in the

statute is unaffected by whether or not subsection (b) results in disparate treatment between qualified health care providers and other health care providers with respect to the immunity afforded under the statute. This is not an ambiguity. We cannot declare the statute is "illogical" and subject to more than one reasonable interpretation simply because the legislature could have written a different statute without making any such distinction. Even if we were to question this disparity, it would not be our prerogative to second guess a policy decision made by our legislature and disregard the statute as written. "[S]tatutory revision is beyond our authority." *Indiana Right to Life Victory Fund and Sarkes Tarzian, Inc. v. Diego Morales, et al.*, No. 23S-CQ-108, *slip op.* at *11 (Ind. September 25, 2023). Of course, if the legislature desires a different result, it may revisit and amend the statute.

### Third Contention: Other States Have Recognized Immunity for Acts Leading to the Making of a Report and Medical Malpractice

[46] The Hospital urges that we adopt the approach taken by other states that "have mandatory reporting statutes similar to Indiana which provide immunity for acts leading to the making of a report while, at the same time providing no immunity for medical malpractice." Appellees' Br. p. 13. The Hospital maintains that we should resolve the alleged ambiguity in Indiana's reporting statute by modeling our interpretation of the statute after opinions in other states, in particular Michigan and Tennessee, which "have drawn the line between acts related to the report itself," which have immunity, and "acts

related to treatment of the child causing direct injury," which may be subject to a medical malpractice claim. *Id.* at 15.

[47] While the statutes from other states cited by the Hospital may be similar to Indiana's, they also differ on the dispositive issue, namely, the extent to which the relevant provisions differentiate between the immunity provided for mandatory child abuse or neglect reporting and liability for medical malpractice claims. The flaw in the Hospital's argument is simply that there is a substantial and material difference between those statutes and Indiana's statute. Most importantly, our legislature has already "drawn the line," and it is not our prerogative to draw a different line.

### The Michigan and Tennessee Statutes

[48] The Michigan reporting statute provides, in relevant part, that:

> A person acting in good faith who makes a report [of child abuse or neglect] or assists in any other requirement of this act shall be immune from civil or criminal liability which might otherwise be incurred thereby. A person making a report or assisting in any other requirement of this act shall be presumed to have acted in good faith. *This immunity from civil or criminal liability extends only to acts done pursuant to this act and does not extend to a negligent act which causes personal injury or death or the malpractice of a physician which results in personal injury or death.*

Mich. Comp. Laws §722.625 (2022) (emphasis added).

[49] In *Awkerman v. Tri-County Orthopedic Group, P.C.*, 373 N.W.2d 204, 206 (Mich. Ct. App. 1985), the Michigan Court of Appeals rejected the parents' contention

that Michigan's child abuse reporting statute "does not preclude recovery of damages for filing an erroneous child abuse report if that filing was the result of the malpractice of the defendant." The Court held that the Michigan statute "clearly and unambiguously provides immunity to persons who file a child abuse report in good faith." *Id.* And the Court continued:

> the reports were filed due to an allegedly negligent diagnosis . . . Such an allegation cannot, as a matter of law, successfully avoid the immunity provided by the child abuse reporting statute.

*Id.* And in also rejecting the parents' claim for consequential damages, the court concluded that "the statute was not intended to apply to personal injuries resulting from the filing of an erroneous report, but rather to injuries which result *directly* from the malpractice." *Id.*

[50] The Michigan statute addressed in *Awkerman* contains an explicit dichotomy. First, the statute describes the immunity from liability included, that the immunity "extends only to acts done pursuant to this act," and then describes the immunity excluded, "a negligent act which causes personal injury or death or to the malpractice of a physician which results in personal injury or death." Mich. Comp. Laws §722.625. There is no such distinction, express or implied, in the Indiana statute. When read together, subsection (a) and subsection (b) of the Indiana reporting statute provide that the immunity granted under subsection (a) of the statute does not include claims which may be brought under the Medical Malpractice Act.

The Hospital contends that we should apply the Michigan court's reasoning to the Indiana statute given that in *Anonymous Hospital v. A.K.* we cited *Awkerman* with approval. *See* 920 N.E.2d at 710. But, here, we are presented with a different statute, which contains a medical malpractice exception and does not make the distinction clearly expressed in the Michigan statute.

The Hospital next relies upon *Bryant-Bruce v. Vanderbilt University Inc.*, 974 F. Supp. 1127 (M.D. Tenn. 1997), a federal court opinion applying the Tennessee reporting statute to an action for damages arising from reports of suspected child abuse. The Tennessee statute contains the following explicit exception to immunity for health care providers:

> Nothing in this subsection (a) [granting report of harm immunity to health care providers] shall be construed to confer any immunity upon a health care provider for a criminal or civil action *arising out of the treatment of the child about whom the report of harm was made.*

Tenn. Code Ann. § 37-1-410(a)(4) (2010) (emphasis added). This provision is analogous but not equivalent to subsection (b) in Indiana's reporting statute.

The *Bryant-Bruce* court first described in general terms the nature and extent of statutory reporting immunity under the Tennessee statute. Citing a Tennessee state court opinion, the federal court recited the general rule under the Tennessee statute that, "a physician receives protection from diagnosing, reporting, and testifying regarding suspected abuse," but that "a physician is not immune for those actions unrelated to a physician's duty to report child abuse."

1127 F. Supp. at 1141. The court then addressed the same dichotomy under Tennessee law which the Hospital contends applies in Indiana, the distinction between actions of health care providers "arising from the reporting of child abuse," which are protected, and claims arising "under a theory of malpractice or negligence, rather than from reporting a medical condition based on suspected child abuse," which may be actionable. *Id.* In other words, the court explained, immunity does not extend to "other improper actions taken beyond the reporting requirement," and the Tennessee reporting statute provides immunity for physicians "only to the extent that their conduct arises from their duty to report suspicions of child abuse. . . ." *Id.*

[54] The federal court granted the Vanderbilt Defendants' motion for partial summary judgment "for the actions taken in compliance with Defendants' duty to report suspicions of child abuse under [the Tennessee reporting statute] . . . . 974 F. Supp. at 1148. And the court denied the Defendants' motion "to the extent that Defendants' actions were not taken pursuant to said legal duty or may have exceeded such duty. . . ." *Id.* The court then allowed the professional negligence count, the medical malpractice count of the plaintiffs' complaint, to go forward for trial on disputed facts.

[55] Here, the Hospital argues that, notwithstanding the enactment of subsection (b), we should embrace the *Bryant-Bruce* analysis and continue to differentiate between statutory reporting immunity for the conduct of health care providers when creating the report and liability for conduct unrelated to the reporting. But by its terms the Tennessee health care provider exemption from reporting

immunity applies only to "a criminal or civil action arising out of the *treatment* of the child about whom the report of harm was made." Tenn. Code Ann. § 37-1-410(a)(4) (emphasis added). In contrast, the Indiana subsection (b) medical malpractice exemption from reporting immunity is not limited to "the treatment of the child." Subsection (b) is unqualified. It does not differentiate between creation of the report or the care, treatment, or other professional health care services rendered to the putative child victim unrelated to the reporting.

[56] Under subsection (b), there is no immunity for medical malpractice whether a qualified health care provider makes or causes a negligent report to be made, or renders care, treatment, or other professional services to the child. A qualified health care provider, who is subject to the Medical Malpractice Act, is subject to the same standard of care and potential liability as might otherwise be imposed upon them in another context, whether the claim is that the provider made or caused to be made a negligent report or that the provider was negligent when providing "professional intervention" under any of the categories enumerated under Indiana Code Section 31-33-6-1(a)(5).[4]

---

[4] Section 31-33-6-1(a)(5) was also added to Senate Bill 431 and reads as follows:

(5) is a health care provider and provides professional intervention resulting from a report that a child may be a victim of child abuse or neglect, including:

(A) providing care or treatment to the child;

(B) participating in a case review concerning the child;

(C) providing advice or consultation concerning the child;

(D) disclosing medical records and other health information concerning the child, in accordance with federal or state law governing the disclosure of medical records;

[57] We conclude that the Michigan and Tennessee statutes differ significantly from the Indiana statute and are not helpful in understanding the Indiana statute. The Indiana statute, including subsections (a) and (b), does not make the distinctions which appear in the Michigan and Tennessee statutes. The immunity provided in the Indiana reporting statute was not intended to shield a qualified health care provider from an action for medical malpractice that would otherwise apply on the same facts in any other context.

[58] Subsection (b) means that Indiana's abuse or neglect reporting statute does not preempt the Medical Malpractice Act, and, again, in that respect, subsection (b) supersedes our opinion in *Anonymous Hospital v. A.K.* Subsection (b) simply means that there can be liability for medical negligence arising from creation of an abuse or neglect report as well as the subsequent "professional intervention resulting from a report," including but not limited to "care or treatment to the child" who may be a victim of child abuse or neglect. *See* Indiana Code Section 31-33-6-1(a)(5)(A)-(F).

### Fourth Contention: Federal Law Allows for Only One Reasonable Statutory Interpretation

[59] Finally, the Hospital contends that immunity for all acts leading to the making of a child abuse or neglect report is necessary to comply with federal law under the Federal Child Abuse Prevention and Treatment Act, 42 U.S.C. §5101-5106,

---

(E) providing information to a child fatality review team; or

(F) recommending judicial action concerning a child; or

enacted in 1974. The Hospital cites a 1983 Alabama Supreme Court opinion, *Harris v. City of Montgomery*, 435 So.2d 1207, 1213 (Ala. 1983), which states that "Section 5103(b)(2) expressly provides that states must grant the required immunity for mandatory reporting and permissive reporting of known or suspected child abuse or neglect in order to qualify for assistance." Appellees' Br. p. 17. However, 42 U.S.C. § 5103, cited in the 1983 Alabama Supreme Court opinion, was repealed in 1996. In addition, the Alabama case would not otherwise be on point given that the court cited the federal statute only to reject a state constitutional challenge to that state's Child Abuse and Reporting Act.

[60] The Hospital asserts that it is "illogical for the Indiana legislature to pass a mandatory reporting statute in order to qualify for federal financial assistance and then remove that immunity in a subsequent subsection of the same statute." Appellees' Br. p. 18. But subsection (b) does not "remove" the broad grant of statutory immunity under subsection (a). Rather, it creates an exception for medical malpractice, an exception which simply requires that when participating in child abuse or neglect reporting, a qualified health care provider must observe the same standard of care as they would otherwise observe.

[61] Whether Indiana is in compliance with federal law is not a question presented in this appeal, and we decline to offer a gratuitous opinion on whether the Indiana statute complies with the current federal statute. *See* 42 U.S.C. § 5106a (concerning federal grants to states for child abuse or neglect prevention and treatment programs). Even if, for the sake of argument, Indiana's reporting

statute were deemed not to comply with federal grant conditions, that determination would not alter the intent of the legislature as disclosed by the text of the statute. The Hospital confuses "legislative intent" with "legislative result." *See State ex rel. Bynum v. LaPorte Superior Court No. 1*, 259 Ind. 647, 650, 291 N.E.2d 355, 356 (Ind. 1973) (legislative intent and legislative result "are not always one and the same thing."). The legislative intent and the statute's meaning would remain intact notwithstanding any possible unforeseen or unintended side effects. *See id.* ("Once having determined such intent . . . . we are no more at liberty to adopt a construction that will not give effect to such intent . . . notwithstanding that . . . we perceive undesirable side effects apparently not envisioned at the time of passage.").

## Conclusion

[62]     We conclude that subsection (b) represents a deliberate legislative policy determination that notwithstanding the reporting immunity provided under subsection (a), the standard of care for qualified healthcare providers under the Medical Malpractice Act applies to child abuse reporting. Thus, we reverse the trial court's grant of summary judgment for the Hospital, direct the trial court to deny the Hospital's motion for summary judgment, and remand for further proceedings not inconsistent with this opinion.

[63]     Reversed and remanded.

Bailey, J., and Crone, J., concur.